RECEIPT #

AMOUNT $ _N/A_

SUMMONS ISSUED _N/A_

LOCAL RULE 4.1_____

WAIVER FORM_____

MCF ISSUED_____

BY DPTY. CLK. _m_

DATE_____ _12-20-04_

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

FRED T. VANDAM, Trustee of )
105 Holmes Avenue Realty Trust, )
                       )
        Plaintiff, )
                       )
    v. )     Civil No.
                       )
DAVID M. MCSWEENEY, SR., )
Trustee of the MC Realty Trust, )  Formerly
ROCKLAND LEASE FUNDING CORP., )  Case No. 04-4389-F
UNITED STATES OF AMERICA, )  Suffolk Co. Sup. Ct.
GENERAL ELECTRIC COMMERCIAL )
EQUIPMENT FINANCING, )

# 04 12654 GAO

        Defendants. )

MAGISTRATE JUDGE _Alexander_

NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

The defendant United States of America, by its attorney,
Michael J. Sullivan, United States Attorney for the District of
Massachusetts, respectfully states as follows:

1. The Plaintiff, Fred T. Van Dam, has filed a Complaint in
Interpleader pending in the Commonwealth of Massachusetts
Superior Court for Suffolk County, entitled Fred T. Van Dam v.
David M. McSweeney et al., Case No. 04-4389-F.

2. The subject matter of the interpleader is property on
which the United States has a lien.

3. The United States may have an interest in the interplead
funds. (Complaint ¶12).

4. This action is removable to the United States District
Court for the District of Massachusetts, pursuant to 28 U.S.C.
§§1441, 1442 and/or 1444.

- 2 -

5.  No prior removal of this action has been attempted.

6.  The removal of this action is timely under the provisions of 28 U.S.C. §1446(b).

7. Copies of all pleadings received by the defendant United States are attached hereto.

MICHAEL J. SULLIVAN
United States Attorney

BARBARA HEALY SMITH
Assistant U.S. Attorney

STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6565

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail on 12/20/04 without attachments

Assistant U.S. Attorney

JS 44 (N.D. Ohio)

1

# Civil Cover Sheet

The JS-44 Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Please refer to the instructions on page 2.

## 1. (a) PLAINTIFFS

Fred T. Van Dam, Trustee of 105 Holmes Avenue Realty Trust

## DEFENDANTS

David M. McSweeney, Trustee of MC Realty Trust, Rockland Lease Corp., United States of America, General Electric Commercial Equipment Financing

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c)** ATTORNEY'S NAME (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kevin Scanlon, Barron & Stadfeld, P.C., 100 Cambridge Street
Suite 1310, Boston, MA 02114, (617) 723-9800

ATTORNEYS (IF KNOWN)

See Attached

04  12654 GAO

## II. BASIS OF JURISDICTION (PLACE A check IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [✔] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Gov't Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)
(PLACE A CHECK IN ONE BOX FOR PLAINTIFF AND IN ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. ORIGIN (PLACE A CHECK IN ONE BOX ONLY)

- [ ] 1 Original Proceeding
- [✔] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT    Please click on the appropriate nature of suit

### CONTRACT
110 Insurance
120 Marine
130 Miller Act
140 Negotiable Instrument
150 Overpayment Recovery & Enforcement of Judgment
151 Medicare Act
152 Recovery of Defaulted Student Loans (Excluding Veterans)
153 Recovery of Overpayment of Vet's Benefits
160 Stockholders' Suits
190 Other Contract
195 Contract Prod. Liability

### REAL PROPERTY
210 Land Condemnation
220 Foreclosure
230 Rent Lease & Ejectm't
240 Torts to Land
245 Tort Product Liability
290 All Other Real Prop.

### TORTS
**PERSONAL INJURY**
310 Airplane
315 Airplane Product Liability
320 Assault, Libel, Slander
330 Federal Employer's Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Pers. Injury

**PERSONAL INJURY**
362 Personal Injury– Med. Malpractice
365 Personal Injury– Product Liability
368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

### CIVIL RIGHTS
441 Voting
442 Employment
443 Housing/ Accommodations
444 Welfare
440 Other Civil Rights

### PRISONER PETITIONS
510 Motions to Vacate Sentence
**HABEAS CORPUS:**
530 General
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Conditions

### FORFEITURE/PENALTY
610 Agriculture
620 Other Food & Drug
625 Drug Related Seizure of Property 21 USC § 881
630 Liquor Laws
640 Railroad & Truck
650 Airline Regulations
660 Occupational Safety/Health
690 Other

### LABOR
710 Fair Labor Standards Act
720 Labor/Management Relations
730 Labor/Management Reporting and Disclosure Act
740 Railway Labor Act
790 Other Labor Litigation
791 Employees Retirement Income Security Act (ERISA)

### BANKRUPTCY
422 Appeal 28 USC § 158
423 Withdrawal 28 USC § 157

**PROPERTY RIGHTS**
820 Copyrights
830 Patent
840 Trademark

### SOCIAL SECURITY
861 HIA (1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g))
864 SSID Title XVI
865 RSI (405(g))

**FEDERAL TAX SUITS**
870 Taxes (U.S. Plaintiff or Def.)
871 IRS–Third Party 26 USC § 7609

### OTHER STATUTES
400 State Reapportionment
410 Antitrust
430 Banks & Banking
450 Commerce/ICC Rates, etc.
460 Deportation
470 Racketeer Influenced and Corrupt Organizations (Civil RICO)
810 Selective Service
850 Securities/Commodities/Exchange
875 Customer Challenge 12 USC § 3410
891 Agricultural Acts
892 Economic Stabilization Act
893 Environmental Matters
894 Energy Allocation Act
895 Freedom of Information Act
900 Appeal of Fee Determination Under Equal Access to Justice Act
950 Constitutionality of State Statutes
[■] 890 Other Statutory Actions

## VI. CAUSE OF ACTION
(Cite the U.S. civil statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statute unless this is a diversity action)

28 U.S.C. 1441, 1442, 1444 – Interpleader of Surplus Funds

## VII. REQUESTED IN COMPLAINT:
[ ] Check if this is a Fed. R. Civ. P. 23 Class Action

DEMAND: $ _____

CHECK YES ONLY IF DEMANDED IN COMPLAINT:
JURY DEMAND: [ ] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY (SEE INSTRUCTIONS)
JUDGE _____   DOCKET NUMBER _____

12-16-2004
Date

_(Signature of Attorney of Record)_

FOR CLERK'S OFFICE USE ONLY

RECEIPT NO. _____   AMOUNT $ _____   JUDGE _____   MAGISTRATE JUDGE _____

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

FRED T. VANDAM, Trustee of      )
105 Holmes Avenue Realty Trust, )
                                )
            Plaintiff,          )
                                )
    v.                          )    Civil No.
                                )
DAVID M. MCSWEENEY, SR.,        )
Trustee of the MC Realty Trust, )    Formerly
ROCKLAND LEASE FUNDING CORP.,   )    Case No. 04-4389-F
UNITED STATES OF AMERICA,       )    Suffolk Co. Sup. Ct.
GENERAL ELECTRIC COMMERCIAL     )
EQUIPMENT FINANCING,            )
                                )    **04  12654 GAO**
            Defendants.         )

ATTACHMENT TO CIVIL COVER SHEET

Counsel for Defendants

*For United States of America:*      *For Rockland Lease Funding*
                                     *Corp.:*

Stephen J. Turanchik, Esq.           Phillip S. Levoff, Esq.
U.S. Department of Justice            1172 Beacon Street, Suite 202
Post Office Box 55                   Newton, MA 02461
Ben Franklin Station                 (617) 332-0624
Washington, D.C.  20044
(202) 307-6565


*For David M. McSweeney:*            *For General Electric Commercial*
                                     *Equipment Financing:*

David J. Paliotti, Esq.              Charles J. Domestico, Esq.
Greenbaum Nagel Fisher &             Domestico, Lane & McNamara LLP
Hamelburg                            161 Worcester Road
200 High Street                      Framingham, MA 01701
Boston, MA 02110                     (508) 626-9000
(617) 423-4300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) _____ Fred Van Dam, Trustee of 105 HOLMES AVENUE REALTY TRUST

   v. United States of America _____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
   rule 40.1(a)(1)).

   _____    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X__    II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   _____    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

   _____    IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

   _____    V.   150, 152, 153.        # 04  12654 GAO

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court. _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO **X**

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28
   USC §2403)

   YES ☐    NO **X**

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO **X**

7. Do <u>all</u> of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

   YES **X**    NO ☐

   A.   If yes, in which division do <u>all</u> of the non-governmental parties reside?

        Eastern Division  **X**    Central Division ☐    Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
        agencies,  residing in Massachusetts reside?

        Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes,
   submit a separate sheet identifying the motions)

   YES ☐    NO **X**

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _____ Stephen J. Turanchik _____

ADDRESS __U.S. Department of Justice, Tax Division, P.O. Box 55, Ben Franklin Station, Washington, DC 20044_____

TELEPHONE NO. _(202) 307-6565_____

(CategoryForm.wpd - 10/17/02)

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court**

CIVIL DOCKET# **SUCV2004-04389-F**

RE: **Vandam, Trustee 105 Holmes Avenue Realty Trust v McSweeney,Sr Trustee McRealty Trust et al**

TO:Randy J Spencer, Esquire
Barron & Stadfeld PC
100 Cambridge Street
Suite 1310
Boston, MA 02114

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 01/04/2005 |
| Response to the complaint filed (also see MRCP 12) | 03/05/2005 |
| All motions under MRCP 12, 19, and 20 filed | 03/05/2005 |
| All motions under MRCP 15 filed | 03/05/2005 |
| All discovery requests and depositions completed | 08/02/2005 |
| All motions under MRCP 56 served and heard | 09/01/2005 |
| Final pre-trial conference held and firm trial date set | 10/01/2005 |
| Case disposed | 11/30/2005 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session F sitting in **CtRm 2 - 12th fl., 90 Devonshire St., Boston at Suffolk Superior Court.**

Dated: 10/27/2004

Michael Joseph Donovan
Clerk of the Courts

BY: Martin J. Conley/Timothy Walsh
Assistant Clerk

Location: CtRm 2 - 12th fl., 90 Devonshire St., Boston
Telephone: 617-788-8131

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 2585505 complain powersje

| CIVIL ACTION COVER SHEET | NO.(S) | Trial Court of Massachusetts Superior Court Department County: Suffolk |
|---|---|---|

**PLAINTIFF(S)**
Fred T. Van Dam, Trustee of 105 Holmes Avenue Realty Trust

**DEFENDANT(S)**
David M. McSweeney, Sr., Trustee of McRealty Trust and Rockland Lease Funding Corp.

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Randy J. Spencer, Esq.
Barron & Stadfeld, P.C.
100 Cambridge St., Suite 1310, Boston, MA 02114
Board of Bar Overseers number: 653879    617-723-9800

**ATTORNEY (if known)**

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Contract Other | ( F ) | ( ) Yes ( x ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
                                                                    Subtotal $. . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . $. . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
F. Other documented items of damages (describe)
                                                                    $. . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                    $. . . . . . . . . . .
                                                            TOTAL $. . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

This is an action in interpleader in order to determine the rights to certain surplus proceeds in the amount of $60,222.04 held by the plaintiff after foreclosure auction sale.
                                                    TOTAL $60,222.04. . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 10/5/04

AOTC-6 mtc005-11/99



RECEIVED
U.S. ATTORNEY
BOSTON MASS.

Nov 30 LRI s1 AM '04

# Commonwealth of Massachusetts

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _SUCV2004-04389-F_____

Fred T. Van Dam, Trustee of
105 Holmes Avenue Realty Trust
_____ , Plaintiff(s)

David M. McSweeney, Sr., Trustee of McRealty Trust, Rockland
Lease Funding Corp., United States of America, and General
Electric Commecial Equipment Financing, a division of Defendant(s)
General Electric Capital Corp.

## SUMMONS

To the above-named Defendant:     United States of America

You are hereby summoned and required to serve upon _Kevin P. Scanlon, Esquire,_____
Barron & Stadfeld, P.C.
plaintiff's attorney, whose address is_100 Cambridge St., Suite 1310, Boston, MA 02114___ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the_____29th_____ day of
_October_____, in the year of our Lord two thousand _____and four_____.

*Michael Joseph Donovan*

Clerk/Magistrate

A true copy Attest:
[11-9-04]  Deputy Sheriff Suffolk County

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM. CIV.P. 1 3rd Rev.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                               C.A. NO. 04-4389 F

```
                                    )
FRED T. VANDAM, TRUSTEE OF          )
105 HOLMES AVENUE REALTY            )
TRUST,                              )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )
                                    )
DAVID M. MCSWEENEY, SR.,            )
TRUSTEE OF MCREALTY TRUST,          )
ROCKLAND LEASE FUNDING CORP.,       )
UNITED STATES OF AMERICA, AND       )
GENERAL ELECTRIC COMMERCIAL         )
EQUIPMENT FINANCING, a division of  )
GENERAL ELECTRIC CAPITAL CORP.      )
                                    )
            Defendants.             )
                                    )
```

## AMENDED COMPLAINT

### Introduction

This is an action in interpleader in order to determine the rights to certain surplus

proceeds held by the Plaintiff after a foreclosure auction sale.

### Parties

1.      Plaintiff, Fred T. Van Dam, Trustee of 105 Holmes Avenue Realty Trust

("Plaintiff"), is a Trust established and recorded on November 18, 1986 in the Suffolk County

Registry of Deeds in Book 13086, Page 92.

2.      Defendant, David M. McSweeney, Sr., Trustee of McRealty Trust ("McSweeney"), is a Trust established and recorded July 6, 1999 in the Suffolk County Registry of Deeds in Book 25018, Page 271.

3.      Defendant, Rockland Lease Funding Corp. ("Rockland") is a lending institution having a usual place of business in New Berlin, New York.

4.      Defendant, United States of America ("U.S.") by way of the Internal Revenue Service ("IRS") is a Federal agency with a usual place of business in Washington D.C., with a area office in Boston, Massachusetts.

5.      Defendant, General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation ("GECC"), is a corporation organized under the laws of the State of Delaware having a usual place of business at 44 Old Ridgebury Road, Danbury, Connecticut. Upon information and belief, GECC is duly authorized to do business in the Commonwealth of Massachusetts.

### Complaint for Interpleader

6.      On or about April 24, 2004, Plaintiff, as first mortgagee, sold by foreclosure auction sale a certain parcel of real property located and known as 105 Holmes Avenue, Dorchester, Suffolk County, Massachusetts (the "Real Property"). Defendant, McSweeney was the title-holder and mortgagor of said Real Property.

7.      The foreclosure auction sale was for breach of condition pursuant to a Power of Sale contained in a certain first mortgage on the premises dated June 5, 2000 and with the Suffolk County Registry of Deeds in Book 25020, Page 314. The foreclosure auction sale realized monies in the sum of $310,000.00. Plaintiff retained the sum of $251,038.88 from the sale proceeds representing the following:

2

a.    $90,068.08 in outstanding principal due on the note;

b.    $27,115.00 in interest, late charges and insufficient funds fees;

c.    $102,932.41 in taxes;

d.    $4,500.00 in legal fees to Hogan, Roach & Malone;

e.    $10,794.00 in auctioneer fees and costs to Paul Saperstein;

f.    $7,641.10 in foreclosure fees;

g.    $2,957.87 in foreclosure costs;

h.    $2,113.00 in bankruptcy fees;

i.    $12.75 in bankruptcy costs; and

j.    $2,904.67 in interest on tax lien payoff.

8.    The remaining proceeds from the foreclosure auction in the amount of $58,961.12 are being held by the Plaintiff in an escrow account.  Because the Plaintiff has not been able to identify the proper owner of these funds, it cannot assign a tax identification number to the escrow account and therefore no interest is being accrued on the remaining proceeds.

9.    Defendant, McSweeney, may have an interest in the surplus funds by virtue of an ownership interest, whether legal or equitable, in all or a portion of the real property as evidenced by a Quitclaim Deed, dated June 30, 1999 and recorded with the Suffolk County Registry of Deeds in Book 25018, Page 276.

10.    Defendant, Rockland, may have an interest in the surplus proceeds by virtue of a Mortgage, dated April 17, 2002, and recorded with the Suffolk County Registry of Deeds in Book 28375, Page 53.

3

11.   On or about October 13, 2004, Barron & Stadfeld, P.C., counsel for Plaintiff, was served with a Notice of Levy, which was recorded on July 14, 2004. (A copy of the Notice of Levy and Federal Tax Lien is attached hereto as Exhibit "A").

12.   Defendant, U.S., may have an interest in the surplus proceeds by virtue of a Federal Tax Lien and Notice of Levy as against David McSweeney.

13.   Should this Court determine that ownership interest in the surplus funds is rightfully to David McSweeney, then the U.S. may be entitled to those funds.

14.   On or about October 20, 2004, Barron and Stadfeld, P.C., counsel for the Plaintiff in this action, was served with a Summons, Short Order of Notice, Motion for Equitable Attachment,  Memorandum of Law in Support of Equitable Attachment, Affidavit of Katherine Sanza, Complaint and Civil Action Cover Sheet by the Defendant GECC. (A copy of these documents is attached hereto as Exhibit "B").

15.   Defendant, GECC may have an interest in the surplus proceeds by virtue of Chattel Mortgage, Personal Guaranty, Lease Contract and related agreements attached hereto at Exhibit "B".

16.   Should this Court determine that ownership interest in the surplus funds is rightfully to David McSweeney, then GECC may be entitled to those funds.

**WHEREFORE,** Plaintiff requests as follows:

a.   The Defendants be restrained from instituting any action against the Plaintiff for the recovery of the surplus proceeds or any part thereof;

b.   The Plaintiff be permitted to pay into this Court the surplus proceeds, less the reasonable attorney's fees and costs incurred by the plaintiff in connection with the filing and prosecution of this action;

4

c.    The Plaintiff be discharged from all liabilities except to the party and/or parties

who the Court shall determine is entitled to the surplus proceeds; and

d.    For such other and further relief as this Court deems just and proper.


Respectfully submitted,
Plaintiff,
By his attorneys,


Kevin P. Scanlon
BBO #564978
Randy J. Spencer
BBO #653879
Barron & Stadfeld, P.C.
100 Cambridge Street, Suite 1310
Boston, MA 02114
(617) 723-9800


Dated: October 28, 2004


304476

| Form 668-A(ICS) (Jan. 2003) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

DATE: 10/13/2004

REPLY TO: **Internal Revenue Service**
**LEO GODWIN**
**1250 HANCOCK ST., STE. 503 S**
**QUINCY, MA 02169**

TELEPHONE NUMBER
OF IRS OFFICE: **(617)479-0266**

NAME AND ADDRESS OF TAXPAYER:

**DAVID MCSWEENEY**
**26 PLEASANT ST**
**MILTON, MA 02186-4517**

TO:  **BARRON & STADFELD**
**ATTENTION: THOMAS BENNETT**
**50 STANIFORD STREET**
**BOSTON, MA 02114**

IDENTIFYING NUMBER(S):  **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**

**MCSW**

THIS IS NOT A BILL FOR TAXES YOU OWE. THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2000 | 128377.87 | 14116.52 | 142494.39 |
| 1040 | 12/31/2001 | 17770.62 | 750.22 | 18520.84 |
| 1040 | 12/31/2003 | 9043.91 | 480.53 | 9524.44 |

| | | | | | |
|---|---|---|---|---|---|
| THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ================== ⇒ | | | | **Total Amount Due** | 170539.67 |

We figured the interest and late payment penalty to___**11-12-2004**___

The Internal Revenue Code provides that there is a lien for the amount that is owed. Although we have given the notice and demand required by the Code, the amount owed hasn't been paid. This levy requires you to turn over to us this person's property and rights to property *(such as money, credits, and bank deposits)* that you have or which you are already obligated to pay this person. However, don't send us more than the "Total Amount Due."

**Money in banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must be held for 21 calendar days from the day you receive this levy before you send us the money. Include any interest the person earns during the 21 days. Turn over any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.**

Make a reasonable effort to identify all property and rights to property belonging to this person. At a minimum, search your records using the taxpayer's name, address, and identifying number*(s)* shown on this form. Don't offset money this person owes you without contacting us at the telephone number shown above for instructions. You may not subtract a processing fee from the amount you send us.

**To respond to this levy —**
1. Make your check or money order payable to **United States Treasury**.
2. Write the taxpayer's name, identifying number*(s)*, kind of tax and tax period shown on this form, and "LEVY PROCEEDS" on your check or money order *(not on a detachable stub.)*.
3. Complete the back of Part 3 of this form and mail it to us in the enclosed envelope.
4. Keep Part 1 of this form for your records and give the taxpayer Part 2 within 2 days.

If you don't owe any money to the taxpayer, please complete the back of Part 3, and mail that part back to us in the enclosed envelope.

| Signature of Service Representative **LEO GODWIN** | Title **REVENUE OFFICER** |
|---|---|

Part 1 —  For Addressee          Catalog No. 35389E    www.irs.gov          Form **668-A(ICS)** (1-2003)

**Form 668 (Y)(c)**
(Rev. October 2000)

1008    Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #1<br>Lien Unit Phone:    (617) 316-2575 | Serial Number<br><br>181484204 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

- This Notice of Federal Tax Lien has been filed as a matter of public record.

- IRS will continue to charge penalty and interest until you satisfy the amount you owe.

Name of Taxpayer
DAVID MCSWEENEY

- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.

Residence

26 PLEASANT ST
MILTON, MA 02186-4517

- See the back of this page for an explanation of your Administrative Appeal rights.

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2001 | 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 | 06/28/2004 | 07/28/2014 | 17770.62 |
| 1040 | 12/31/2003 | 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 | 06/21/2004 | 07/21/2014 | 9033.91 |

| Place of Filing | | |
|---|---|---|
| Registry of Deeds<br>Norfolk County<br>Dedham, MA 02026 | Total | 26804.53 |

This notice was prepared and signed at _____BOSTON, MA_____ , on this,

the __13th__ day of __July__ , __2004__.

| Signature *C.Sherwood*<br><br>for LEO GODWIN | Title<br>REVENUE OFFICER<br>(617) 479-0266 | 21-04-3506 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 403)

CAT. NO 60025X

1008

COURT RECORDING DATA

```
---------------------------------------+---------------------------------------
        INTERNAL REVENUE SERVICE       | Lien Recorded   : 07/14/2004 - 17:00PM
  FACSIMILE FEDERAL TAX LIEN DOCUMENT   | Recording Number: 01008MCS2453201
                                        | UCC Number      : IRS181484304
                                        | Liber           :
                                        | Page            :
---------------------------------------+---------------------------------------
Area: SMALL BUSINESS/SELF EMPLOYED #1   | IRS Serial Number: 181484304
Lien Unit Phone: (617) 316-2575         |
---------------------------------------+---------------------------------------
```

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

---

Name of Taxpayer :
  DAVID MCSWEENEY

---

Residence :
  26 PLEASANT ST
  MILTON, MA 02186-4517

---

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2001 | 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 | 06/28/2004 | 07/28/2014 | 17770.62 |
| 1040 | 12/31/2003 | 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 | 06/21/2004 | 07/21/2014 | 9033.91 |

---

Filed at:   U.S. District Court
            USDC ELECTRONIC                        Total | $    26804.53
            Boston, MA 02109

---

This notice was prepared and executed at BOSTON, MA
on this, the 13th day of July, 2004.

---

Authorizing Official:              | Title:
    LEO GODWIN                     | REVENUE OFFICER        21-04-3506
                                   |

---

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 04-4544 G

General Electric Commercial Equipment
Financing, a division of _____, Plaintiff(s)
General Electric Capital Corporation

v.

David M. McSweeney et al. _____, Defendant(s)
Barron & Stadfeld, P.C.

## SUMMONS

**A TRUE COPY ATTEST**

**CONSTABLE**

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon Eric A. Howard, Esquire

plaintiff's attorney, whose address is 161 Worcester Road, Framingham, MA 01701, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**Witness, Suzanne V. DelVecchio, Esquire,** at Boston, the _____ 19th _____ day of _____ October _____, in the year of our Lord two thousand _____ four _____.

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

SUFFOLK, ss.

# Commonwealth of Massachusetts



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 04-4544 G

GENERAL ELECTRIC COMMERCIAL EQUIPMENT FINANCING, Plaintiff(s)

A TRUE COPY ATTEST

v.

CONSTABLE

DAVID M. MCSWEENEY ET AL

, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant: **DAVID M. MCSWEENEY, individually and David M. McSweeney, dba
D. MCSWEENEY AND SONS INC and BARRON & STADFELD PC**

You are hereby summoned and required to serve upon    **Eric A. Howard Esq.**

plaintiff's attorney, whose address is    **161 Worcester Rd.  Framingham, MA 01701**

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You are also required to file your answer to the complaint in
the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reason-
able time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint,
for a preliminary injunction **re: real estate attachment** and that a hearing upon such application will be held at the court house at said
Boston of our said court on    **Monday in room 3   12th Floor**    the    **twenty fifth**
day of    **October**    A.D. 200 **4**, at    **two**    o'clock **PM**., at which time you may
appear and show cause why such application should not be granted.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the    **nineteenth**    day of
    **October**    , in the year of our Lord two thousand    **four**    .

**Asst.  Clerk/Magistrate**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

# DOMESTICO, LANE & McNAMARA, LLP

### COUNSELLORS AT LAW

THE MEADOWS
161 WORCESTER ROAD
FRAMINGHAM, MASSACHUSETTS 01701

TELEPHONE  (508) 626-9000
FACSIMILE  (508) 626-9001

CHARLES J. DOMESTICO
PAUL M. LANE
JOHN J. McNAMARA

CDOMESTICO@DLandM.COM
PLANE@DLandM.COM
JMcNAMARA@DLandM.COM

BRENDAN M. O'ROURKE
DWIGHT T. BURNS, III
ERIC A. HOWARD
LEONARD D. ZAMANSKY
MATTHEW A. FOYTLIN

BOROURKE@DLandM.COM
DBURNS@DLandM.COM
EHOWARD@DLandM.COM
LZAMANSKY@DLandM.COM
MFOYTLIN@DLandM.COM

October 18, 2004

**VIA HAND DELIVERY**

Civil Clerk's Office
Suffolk Superior Court
U.S. Post Office & Courthouse
8th Floor
90 Devonshire Street
Boston, MA   02109

Re:  General Electric Equipment Financing, a division
     of General Electric Capital Corporation v. David
     McSweeney, et al.
     Civil Action No.:   TBD

Dear Sir/Madam:

Please find the following documents enclosed for filing in
connection with the above-referenced matter:

1.  Plaintiff's Motion for Appointment of Special Process
    Server;
2.  Plaintiff's Motion for a Short Order of Notice;
3.  Plaintiff's Motion for Equitable Attachment;
4.  Plaintiff's Memorandum of Law in Support of
    Plaintiff's Motion for Equitable Attachment;
5.  Affidavit of Katherine Sanza;
6.  Complaint; and
7.  Civil Action Cover Sheet.

Civil Clerk
October 18, 2004
Page 2


    Kindly file and docket in your usual manner.  Thank you for
your attention to this matter.

Sincerely yours,

*E. A. Howard*

Eric A. Howard

Enclosures
cc:  Charles J. Domestico, Esquire

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County: Suffolk |
|---|---|---|

**PLAINTIFF(S)**
General Electric Commercial Financing

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** 508-626-9000
Eric A. Howard, Esquire
Domestico, Lane & McNamara, LLP
161 Worcester Road, Framingham, MA 01701
Board of Bar Overseers number: 640330

**DEFENDANT(S)**
David McSweeney, individually
David McSweeney

**ATTORNEY (if known)**

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 & 104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A02 | | | |
| D02 | Breach of Contract | ( F ) | ( ) Yes    ( X ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
                                                                        Subtotal $. . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . $. . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
F. Other documented items of damages (describe) . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                        $. . . . . . . . . . . .
                                                            TOTAL $. . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Breach of lease contract.

                                                            TOTAL $.15,000 . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _Eric Howard_          DATE: 10/18/04

AOTC-6 mtc005-11/99
AOSC-1 2000

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
C.A. No.

| | |
|---|---|
| GENERAL ELECTRIC COMMERCIAL EQUIPMENT FINANCING, a division of GENERAL ELECTRIC CAPITAL CORPORATION <br><br> Plaintiff, <br><br> v. <br><br> DAVID M. MCSWEENEY, individually, and DAVID M. MCSWEENEY, d/b/a D. MCSWEENEY AND SONS, INC., <br><br> Defendant, <br><br> and <br><br> BARRON & STADFELD, P.C., <br><br> Reach and Apply Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

## INTRODUCTION

This is an action for money damages arising out of defendants David M. McSweeney, individually and David M. McSweeney, d/b/a D. McSweeney and Sons, Inc. ("McSweeney") default for nonpayment and other obligations of the terms of a certain Chattel Mortgage and related agreements, whereby Rockland Lease Funding Corp. ("Rockland") financed McSweeney's lease of One (1) 1998 International 4700 Truck for use in his business operations. Plaintiff General Electric Commercial Equipment

Financing, a division of General Electric Capital Corporation ("GECC"), Rockland and McSweeney executed a Notice and Acknowledgement agreement whereby Rockland assigned to GECC all of its rights under the Lease Contract and all other related agreements, including a Guaranty executed by McSweeney. McSweeney is in default under the terms and conditions of the Lease Agreement and related agreements. David McSweeney, individually is the unlimited and unconditional guarantor of McSweeney's payment obligations to GECC.

GECC seeks to reach, hold, and apply as payment for the expected judgment the first $15,000.00 of David McSweeney's beneficial interest in the net sale proceeds of the property located at 105 Homes Avenue in Dorchester, Massachusetts ("Property") currently held in an escrow account by the reach and apply defendant, Barron & Stadfeld, P.C. Upon information and belief, David McSweeney is the trustee and beneficiary of the MC Realty Trust, the owner of the Property and has a beneficial interest in the net sale proceeds. The net sale proceeds total $63,126.71 and are being held in an escrow account by the law firm of Barron & Stadfeld, P.C.

## PARTIES

1.    Plaintiff GECC is a corporation organized under the laws of the State of Delaware having a usual place of business at

2

44 Old Ridgebury Road, Danbury, Connecticut.  GECC is duly authorized to do business in the Commonwealth of Massachusetts.

2.    Defendant David McSweeney is an adult individual having a last known residence at 26 Pleasant Street, Milton, Massachusetts.

3.    Defendant D. McSweeney and Sons, Inc. ("McSweeney") is, upon information and belief, a Massachusetts corporation with a principal place of business at 105 Holmes Street, Dorchester, MA.

4.    Reach and apply defendant Barron & Stadfeld, PC ("Barron & Stadfeld") is, upon information and belief, a Massachusetts corporation with a principal place of business at 50 Staniford Street, Boston, Massachusetts.

<u>FACTS</u>

5.    On or about December 22, 2000, McSweeney executed a certain Chattel Mortgage and related agreements (hereinafter "Lease Contract") whereby Rockland Lease Funding Corp. ("Rockland") financed McSweeney's lease of One (1) 1998 International 4700 Truck, Vin#1HTSLAAM7WH522760, (hereinafter "Truck").  <u>See</u> Lease Contract, including the applicable Promissory Note, Security Agreement and Security Agreement for Cash Collateral attached to Affidavit of Katherine M. Sanza ("Sanza Affidavit") as Exhibit "A" and incorporated herein.

3

6.    The aggregate principal amount financed by Rockland for the purchase of the Truck ($40,500.00), as set forth in the Lease Contract.  Id.

7.    On or about December 21, 2000, GECC, Rockland and McSweeney executed a Notice and Acknowledgement agreement whereby Rockland assigned to GECC all of its rights under the Lease Contract.  See Notice and Acknowledgement agreement attached to the Sanza Affidavit as Exhibit "B" and incorporated herein.

8.    Pursuant to the terms of the Lease Contract, McSweeney agreed to make forty-eight (48) consecutive equal monthly installment payments to GECC of One Thousand Two Hundred and Fifteen Dollars and No Cents ($1,215.00) due and payable on the ninth day of each month, beginning on February 4, 2001.

9.    As partial consideration for Rockland and GECC extending credit to McSweeney, and pursuant to the terms of the Lease Contract and Notice and Acknowledgement agreement, McSweeney granted GECC a first position security interest in the Truck.  See copies of the filed Uniform Commercial Code Financing Statements (both state and local filings) attached to the Sanza Affidavit as Exhibit "C" and incorporated herein.

10.   As partial consideration for Rockland and GECC extending credit to McSweeney, David McSweeney, individually executed a Personal Guaranty guaranteeing the payment and other obligations of McSweeny to GECC under the Lease Contract.  See

Personal Guaranty executed by David McSweeney attached to the Sanza Affidavit as Exhibit "D" and incorporated herein.

11.  McSweeney has not made a monthly rental payment on the Truck since December, 2002.  See Sanza Affidavit at ¶9.

12.  Accordingly, McSweeney is presently in default for twenty-one (21) monthly rental payments due under the Lease Contract.  As of October 1, 2004, the amount due and owing GECC is $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.  See Sanza Affidavit at ¶10.

13.  GECC has provided oral and written notice to McSweeney of the default and his payment obligations under the Lease Contract.  See Sanza Affidavit at ¶11.

14.  Notwithstanding GECC's oral and written demands, McSweeney has failed and refused to pay his monthly payment obligations due and owing to GECC under the Lease Contract.  See Sanza Affidavit at ¶12.

15.  McSweeney's failure to make monthly rental payments when due constitutes an event of default under paragraph 17 of the applicable Security Agreement for the Truck and entitles GECC to declare all obligations immediately due and payable and take immediate possession of the Truck pursuant to paragraph 17 of such Security Agreement.  See Sanza Affidavit at ¶13.

16. The Truck has been repossessed and has a fair market value of $20,000.00. See Sanza Affidavit at ¶14.

17. As of October 1, 2004, the amount due and owing GECC is $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs. See Sanza Affidavit at ¶15.

18. McSweeney and David McSweeney, individually have no defenses to the amount claimed to be due and owing to GECC.

19. Upon information and belief, McSweeney and/or David McSweeney, individually does not have any liability insurance or bond available to satisfy any judgment GECC may obtain against them in this action.

20. Upon information and belief, defendant David McSweeney, individually, is the Trustee and beneficiary of the MC Realty Trust ("Trust") u/d/t dated June 30, 1999 and recorded with the Suffolk County Registry of Deeds.

21. Upon information and belief, the Trust was the owner of the property located 105 Homes Avenue, Dorchester, Masssachusetts ("Property").

22. Upon information and belief, in June 2004, the Trust sold the Property for $310,000.00. See letter from Barron & Stadfeld to Philip Levoff, Esquire dated June 17, 2004 attached hereto as Exhibit "E."

23. Upon information and belief, in June 2004, the net sale proceeds of the Property total $63,126.71. See Exhibit "E."

24.   Upon information and belief, the $63,126.71 in net sale proceeds is being held in an escrow account by the reach and apply defendant Barron & Stadfeld.

25.   Upon information and belief, David McSweeney, individually has a beneficial interest in the $63,126.71 in net sale proceeds being held in escrow by the reach and apply defendant Barron & Stadfeld.

26.   Defendants and Barron & Stadfeld have refused to make payment to GECC on the outstanding debt ($31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs) owed to GECC, in whole or in part.

27.   David McSweeney, individually has no other assets known to GECC to satisfy the judgment GECC expects to recover and GECC does not know when the monies owed by Barron & Stadfeld to David McSweeney, individually will be due or become payable.

28.   GECC knows of no other available remedy at law to enforce payment of the expected judgment in its favor.

COUNT I:   BREACH OF CONTRACT - MCSWEENEY

29.   GECC repeats and reavers the allegations of paragraphs 1 through 28 of this Complaint as if expressly set forth herein.

30.   As a result of McSweeney's breach of its payment and other obligations under the Lease Contract, McSweeney is liable to GECC, as of October 1, 2004, in the amount of $31,275.50, plus

accruing interest, late charges and reasonable attorneys' fees and costs.

## COUNT II:   BREACH OF CONTRACT - MCSWEENEY, INDVIDUALLY

31. GECC repeats and reavers the allegations of paragraphs 1 through 30 of this Complaint as if expressly set forth herein.

32. As a result of David McSweeney's breach of his payment and other obligations under the Lease Contract, David McSweeney is liable to GECC, as of October 1, 2004, in the amount of $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

## COUNT III:   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - McSWEENEY

33. GECC repeats and reavers the allegations of paragraphs 1 through 32 of this Complaint as if expressly set forth herein.

34. By its actions and omissions, McSweeney has breached its implied obligations of good faith and fair dealing to GECC. McSweeney is, therefore, liable to GECC, as of October 1, 2004, in the amount due of $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

## COUNT IV:   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - DAVID McSWEENEY

35. GECC repeats and reavers the allegations of paragraphs 1 through 34 of this Complaint as if expressly set forth herein.

36. By its actions and omissions, David McSweeney has breached his implied obligations of good faith and fair dealing

to GECC. David McSweeney is, therefore, liable to GECC, as of October 1, 2004, in the amount of GECC $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

## COUNT V:  GUARANTY AGAINST DAVID MCSWEENEY, INDIVIDUALLY

37.  GECC repeats and reavers the allegations of paragraphs 1 through 36 of this Complaint as if expressly set forth herein.

38.  David McSweeney, as the individual and unconditional guarantor of McSweeney's payment and other obligations to GECC, is liable on his unconditional Guaranty to GECC in the amount of $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

## COUNT VI:  REACH AND APPLY

39.  GECC repeats and reavers the allegations of paragraphs 1 through 38 of this Complaint as if expressly set forth herein.

40.  Upon information and belief, David McSweeney, individually is owed at least $63,000.00 by the defendant Barron & Stadfeld as a beneficiary of the Trust.

41.  Upon information and belief, David McSweeney, individually has no other property or means to satisfy his undisputed debt to GECC, other than the net sale proceeds of the Property, which are being held by Barron & Stadfeld in escrow.

42.  David McSweeney, individually owes GECC $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

43.  Barron & Stadfeld acknowledges that the net sale proceeds of the Property are being held in escrow and are due and owing to David McSweeney, individually.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff GECC requests the following relief:

(1)  With respect to Count VI, that this Court issue an order restraining and enjoining David McSweeney, individually from selling, transferring, assigning or otherwise disposing of, alienating, or hypothecating any beneficial interest in the first $15,000.00 of the $63,126.71 due or to become due to him from Barron & Stadfeld, pending further order from this Court;

(2)  With respect to Count VI, that this Court issue an order permanently restraining and enjoining David McSweeney, individually from selling, transferring, assigning or otherwise disposing of, alienating, or hypothecating any beneficial interest in the first $15,000.00 of the $63,126.71 due or to become due to him from Barron & Stadfeld, pending further order from this Court;

(3)  With respect to Count VI, that this Court issue an order restraining and enjoining Barron & Stadfeld from selling, transferring, assigning or otherwise disposing of, alienating, or hypothecating any beneficial of David McSweeney in the first $15,000.00 of the $63,126.71 due or to become due to David

10

McSweeney, individually from Barron & Stadfeld, pending further order from this Court;

(4)  With respect to Count VI, that this Court issue an order permanently restraining and enjoining Barron & Stadfeld from selling, transferring, assigning or otherwise disposing of, alienating, or hypothecating any beneficial of David McSweeney in the first $15,000.00 of the $63,126.71 due or to become due to David McSweeney, individually from Barron & Stadfeld, pending further order from this Court;

(5)  With respect to Count VI, that this Court issue an order requiring Barron & Stadfeld to pay the first $15,000.00 of the $63,126.71 due or to become due to David McSweeney, individually to GECC in satisfaction of the expected judgment;

(6)  With respect to Count I, that this Court grant judgment in favor of GECC and against McSweeney and David McSweeney, individually in the amount of damages to be proven, plus accruing interest and attorneys' fees and costs;

(7)  With respect to Count II, that this Court grant judgment in favor of GECC and against McSweeney and David McSweeney, individually in the amount of damages to be proven, plus accruing interest and attorneys' fees and costs;

(8)  With respect to Count III, that this Court grant judgment in favor of GECC and against McSweeney in the amount of

damages to be proven, plus accruing interest and attorneys' fees and costs;

(9)  With respect to Count IV, that this Court grant judgment in favor of GECC and against McSweeney in the amount of damages to be proven, plus accruing interest and attorneys' fees and costs;

(10) With respect to Count V, that this Court grant judgment in favor of GECC and against David McSweeney, individually in the amount of damages to be proven, plus accruing interest, attorneys' fees and costs; and

(11) That this Court grant such other and further relief as it deems fair and just.

Respectfully submitted,

General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation

By its attorneys,

*E. a. Howard*

Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18th, 2004

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
C.A. No.

| | |
|---|---|
| GENERAL ELECTRIC COMMERCIAL EQUIPMENT FINANCING, a division of GENERAL ELECTRIC CAPITAL CORPORATION | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DAVID M. MCSWEENEY, individually, and DAVID M. MCSWEENEY, d/b/a D. MCSWEENEY AND SONS, INC., | ) ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| BARRON & STADFELD, P.C., | ) ) |
| Reach and Apply Defendant. | ) ) ) |

## AFFIDAVIT OF KATHERINE M. SANZA

I, Katherine M. Sanza, state that the following facts are based upon my personal knowledge, information and belief, and in so far as facts are stated upon information and belief, I believe the information to be true:

1. I am a Litigation Specialist for General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation (hereinafter "GECC").

1

2.  My responsibilities as a Litigation Specialist include administering the lease and security agreement and collateral underlying the lease that is the subject of this action.

3.  On or about December 22, 2000, David McSweeney d/b/a David McSweeney & Son ("McSweeney") executed a certain Chattel Mortgage and related agreements (hereinafter "Lease Contract") whereby Rockland Lease Funding Corp. ("Rockland") financed McSweeney's lease of One (1) 1998 International 4700 Truck, Vin#1HTSLAAM7WH522760, (hereinafter "Truck"). The aggregate principal amount financed by Rockland for the purchase of the Truck ($40,500.00), as set forth in the Lease Contract. A true and accurate copy of the Lease Contract, including the applicable Promissory Note, Security Agreement and Security Agreement for Cash Collateral is attached hereto as Exhibit "A" and incorporated herein.

4.  On or about December 21, 2000, GECC, Rockland and McSweeney executed a Notice and Acknowledgement agreement whereby Rockland assigned to GECC all of its rights under the Lease Contract. A true and accurate copy of the Notice and Acknowledgement is attached hereto as Exhibit "B" and incorporated herein.

5.  GECC uses a standard chattel mortgage agreement in all of its leasing transactions. The standard chattel mortgage

2

agreement is identical to the Lease Contract executed by McSweeney in favor of Rockland.  A true and accurate copy of the standard chattel mortgage agreement is attached hereto as Exhibit "B" and incorporated herein.

6.    Pursuant to the terms of the Lease Contract, McSweeney agreed to make forty-eight (48) consecutive equal monthly installment payments to GECC of One Thousand Two Hundred and Fifteen Dollars and No Cents ($1,215.00) due and payable on the ninth day of each month, beginning on February 4, 2001.

7.    As partial consideration for Rockland and GECC extending credit to McSweeney, and pursuant to the terms of the Lease Contract and Notice and Acknowledgement, McSweeney granted GECC a first position security interest in the Truck.  Copies of the filed Uniform Commercial Code Financing Statements (both state and local filings) are attached hereto as Exhibit "C" and incorporated herein.

8.    As partial consideration for Rockland and GECC extending credit to McSweeney, David McSweeney, individually executed a Personal Guaranty guaranteeing the payment and other obligations of McSweeny to GECC under the Lease Contract.  A true and accurate copy of the Personal Guaranty executed by David McSweeney is attached hereto as Exhibit "D" and incorporated herein.

9.   According to GECC's records, McSweeney has not made a monthly rental payment on the Truck since December, 2002.

10.   Accordingly, McSweeney is presently in default for twenty-one (21) monthly rental payments due under the Lease Contract.  The amount past due as of October 1, 2004 is $31,275.50, plus accruing interest and late charges.

11.   GECC has provided oral and written notice to McSweeney of the default and his payment obligations under the Lease Contract.

12.   Notwithstanding GECC's oral and written demands, McSweeney has failed and refused to pay the monthly payment obligations due and owing to GECC under the Lease Contract.

13.   McSweeney's failure to make monthly rental payments when due constitutes an event of default under paragraph 17 of the applicable Security Agreement for the Truck and entitles GECC to declare all obligations immediately due and payable and take immediate possession of the Truck pursuant to paragraph 17 of such Security Agreement.

14.   The Truck has been repossessed and has a fair market value of $20,000.00.

15.   As of October 1, 2004, the amount due and owing GECC is $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

4

16.  To the best of my knowledge, neither McSweeney nor David McSweeney, individually has any defense to the amount claimed to be due and owing to GECC.

17.  Neither GECC nor I know of any liability insurance or bond available to satisfy any judgment GECC may obtain against McSweeney and/or David McSweeney, individually in this action.

SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5th the DAY OF OCTOBER, 2004.

Katherine M. Sanza
Litigation Specialist

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                                    C.A. No.

```
                                          )
GENERAL ELECTRIC COMMERCIAL               )
EQUIPMENT FINANCING, a division of        )
GENERAL ELECTRIC CAPITAL CORPORATION      )
                                          )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )
                                          )
DAVID M. MCSWEENEY, individually,         )    MOTION FOR SPECIAL PROCESS
and DAVID M. MCSWEENEY, d/b/a             )    SERVER
D. MCSWEENEY AND SONS, INC.,              )
                                          )
        Defendant,                        )
                                          )
and                                       )
                                          )
BARRON & STADFELD, P.C.,                  )
                                          )
        Reach and Apply                   )
        Defendant.                        )
                                          )
```

        Plaintiff General Electric Commercial Equipment Financing,

a division of General Electric Capital Corporation ("GECC"),

hereby moves this Court, pursuant to Mass. R. Civ. P. 4(c), for

the appointment of Nelson Goldin & Associates of Framingham,

Massachusetts, as process server in this action.  The

undersigned swears that to the best of his knowledge and belief

the person to be appointed process server is a Constable who is

experienced in the service of process, is 18 years of age or

over and is not a party to this action.

Respectfully submitted,

General Electric Commercial Equipment
Financing, a division of General
Electric Capital Corporation

By its attorneys,

*E. A. Howard*

Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18th, 2004

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
C.A. No.

---

GENERAL ELECTRIC COMMERCIAL )
EQUIPMENT FINANCING, a division of )
GENERAL ELECTRIC CAPITAL CORPORATION )
)
)
    Plaintiff, )
)
v. )
)
DAVID M. MCSWEENEY, individually, )
and DAVID M. MCSWEENEY, d/b/a )
D. MCSWEENEY AND SONS, INC., )
)
    Defendant, )
)
and )
)
BARRON & STADFELD, P.C., )
)
    Reach and Apply )
    Defendant. )
)

**MOTION FOR SHORT ORDER OF NOTICE**

---

Plaintiff General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation ("GECC") moves for a Short Order of Notice and a hearing on its Motion for Equitable Attachment. In further support of this motion, GECC submits the Complaint, Motion for Equitable Attachment and accompanying memorandum of law filed herewith.

Wherefore, GECC moves this Court to set a hearing on this matter for Monday, October 25, 2004.

Respectfully submitted,

General Electric Commercial
Equipment Financing, a division of
General Electric Capital
Corporation

By its attorneys,

*E. a. Howard*
Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18th, 2004

**CHATTEL MORTGAGE**
(Equipment Financing Agreement)

CREDITOR: Rockland Lease Funding Corp.
P.O. Box 190, 154 Ditch Road
So. New Berlin, NY 13843

OBLIGOR: Name: D. MCSWEENEY & SON

Address: 105 HOLMES AVENUE

SELLER:
Name:

Address:
City

City.   DORCHESTER, MA 02122
    State    Zip Code:

State    Zip Code

| QUANTITY | DESCRIPTION OF EQUIPMENT: MODEL NO., SERIAL NO. OR OTHER IDENTIFICATION | PRICE |
|---|---|---|
| ONE (1) 1998 INTERNATIONAL 4700 TRUCK WITH A NEW AMERICAN HOOK LIFT; PERSONAL GUARANTEES OF PRINCIPALS; $10,000 CASH COLLATERAL | | |

TOTAL $40,500.00

**ADDITIONAL PROVISIONS (IF ANY) AND/OR LOCATION OF EQUIPMENT OTHER THAN OBLIGOR'S ADDRESS ABOVE**
SAME AS ABOVE

## TERMS AND CONDITIONS OF AGREEMENT

| A. MONTHLY PAYMENT $1215.00  AMOUNT OF ADVANCE: $ 40,500.00 | B. TERM OF AGREEMENT 48 months | C. COMMENCEMENT DATE: | D. ADVANCE PAYMENTS $3645.00 | E. ADVANCE PAYMENTS SHALL BE APPLIED TO THE: 1ST, 47TH & 48RD MONTHS RENT |
|---|---|---|---|---|

1. The obligor named above ("Obligor") hereby grants to the creditor named above ("Creditor") a first priority security interest in the personal property described above and in any schedule signed by the parties and made a part hereof, including all proceeds and products thereof, all proceeds of insurance thereon, all substitutions therefor and all additions thereto (said property, proceeds, products substitutions and additions being herein called "Equipment"), which Equipment Obligor confirms will be used solely for commercial or business purposes (and not for consumer, personal family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in paragraph 4 hereof (and including any amounts specified in any separate promissory note or instrument which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this agreement

2. Creditor agrees to advance to or on behalf of Obligor the above-stated Amount of Advance (herein called the "Advance") which, Obligor agrees may be paid directly by Creditor to Seller in satisfaction of the total purchase price of the Equipment.

3. The term of this Agreement (the "Entire Term") shall be the number of months stated in B above, commencing on the date stated in C above. Obligor authorizes Creditor to insert such commencement date herein, provided that such date shall not be earlier than the date of delivery to Obligor of all or a substantial part of the Equipment.

4. Obligor's total payments for the Entire Term of this Agreement is equal to the monthly payment stated in A above, multiplied by the number of months stated in B above. Obligor agrees to pay the total payment in monthly installments, in advance, each in the amount stated in A above, commencing on the date stated in C above and continuing on the same day of each month thereafter. The "Advance Payments" stated in D above shall be paid by Obligor prior to Creditor's acceptance of this Agreement, and shall be applied to the periodic installments stated in E above. In the event the term of this Agreement does not commence for any reason whatsoever, the Advance Payments stated in D above shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing. **THIS AGREEMENT IS IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.**

*INITIAL* MCS

5. OBLIGOR REPRESENTS THAT IT HAS SELECTED THE EQUIPMENT, AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY. CREDITOR AND CREDITOR'S ASSIGNEE SHALL NOT BE LIABLE TO OBLIGOR OR ANY THIRD PARTY FOR ANY LOSS DAMAGE, INJURY OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE EQUIPMENT OR THEIR USE OR MAINTENANCE THEREOF OR ANY DEFECT THEREIN, THE FAILURE OR OPERATION THEREOF, OR ANY REPAIR, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF OR BY ANY INTERRUPTION OR SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED INCLUDING (WITHOUT LIMITATION) ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL CREDITOR BE LIABLE FOR ANY DAMAGES WHICH MAY BE ASSESSED AGAINST OBLIGOR IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES PATENT, TRADEMARK OR COPY RIGHT. CREDITOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT FOR TAX OR ACCOUNTING PURPOSES, OR AS TO THE COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENT REGULATIONS OR MANUFACTURER OF THE EQUIPMENT. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY SELLER SHALL BE BINDING ON CREDITOR NOR SHALL THE BREACH OF SUCH RELIEVE OBLIGOR OF, OR IN ANY WAY AFFECT, ANY OF OBLIGOR'S OBLIGATIONS TO CREDITOR OR CREDITOR'S ASSIGNEE AS SET FORTH HEREIN. Obligor agrees to look solely to the manufacturer, the Seller named above or the carrier of the Equipment (which are solely responsible for supplying Obligor with all literature and manuals respecting the Equipment) for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, installation or inability to use the Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations). Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

6. Obligor shall accept the Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Equipment as delivered. Unless Obligor gives Creditor and Seller written notice of each defect or other proper objection to any item of Equipment within five (5) days after delivery thereof, it shall be conclusively presumed that the Equipment was duly delivered and unconditionally accepted by Obligor. If Obligor wrongfully refuses delivery of any item of Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Equipment. Upon such payment, this Agreement shall terminate as to such item of Equipment only, and the periodic installment hereunder shall be proportionately adjusted.

7. Obligor shall keep the Equipment within the United States at the above-stated "Location of Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Equipment therefrom for more than thirty (30) days without Creditor's prior written consent.

8. Obligor shall use the Equipment in a careful manner and shall at all times, at its sole expense, keep the Equipment in good operation condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance. Obligor shall not make any alterations, additions, or improvements to the Equipment which are not readily removable without causing damage to or reducing the value of the Equipment. Obligor agrees to cause the Equipment to be maintained by the above-named Seller pursuant to Seller's standard preventive maintenance contract or by a comparable maintenance contract issued by a maintenance provider acceptable to Creditor.

9. Upon Creditor's request, Obligor shall affix and keep in a prominent place on each item of Equipment such labels, plates and/or other markings indicating that the Equipment is financed by Creditor as Creditor shall specify. Creditor shall have the right during normal hours, upon reasonable prior notice to Obligor, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or to other wise protect Creditor's interest.

10. The equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Obligor represents, warrants and covenants that, unless Obligor owns the premises in which the Equipment is to be located and such premises are not subject to any mortgage, Obligor shall provide Creditor, within ten (10) days following the execution by Obligor of this Agreement, with a waiver from each landlord and/or mortgagee of the premises in which the Equipment is to be located of any rights which such landlord and/or mortgagee may have in respect of any of the Equipment (including, but not limited to, claims against the Equipment by reason of accession or distraint, or that the Equipment constitutes a fixture affixed to real property) and to procure for Creditor, in form acceptable to Creditor, such documents with respect to such waiver as Creditor may reasonably request.

11. In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

12. Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under paragraph 4 hereof or any other obligation hereunder because of any such occurrence, in the event of damage to any item of Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor determines that any item of Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor, shall (a) replace the same with like equipment in good condition and repair, or (b) pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such item of Equipment. Upon Creditor's receipt of such payment, Creditor's security interest in such item of Equipment shall cease.

2.

INITIAL D̲ᵗʰᵉ S̲

13. Obligor shall, at its expense, keep the Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the greater of (a) the total periodic installments, or (b) the full replacement cost of the Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property, with companies satisfactory to Creditor. Each policy shall provide that as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, apply any proceeds of such insurance to replace or repair such Equipment and/or to Obligor's obligations hereunder. If Obligor shall fail to provide any such insurance or, within ten (10) days after Creditor's request therefore, shall fail to deliver the policies or certificate thereof to Creditor, then Creditor, at its option, shall have the right to procure such insurance and to add the full cost thereof to the payment next becoming due, which Obligor agrees to pay. The amount of such insurance shall be sufficient to that Equipment. All such insurance shall be in the form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that neither Creditor nor Obligor will be considered a co-insurer. Obligor also shall carry public liability insurance, both personal injury and property damage covering the lessee, if any, shall be payable to Creditor and Creditor's assignee as "loss payee" and will such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required here under. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy. Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Equipment or the use or operation of the Equipment.

14. Obligor covenants and agrees at all times to keep the Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase possession or use of the Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If any of same shall remain unpaid when due, Creditor may pay same and add such payment to the payment next becoming due. Obligor shall execute and deliver to Creditor upon Creditor's request such further instruments, financing statements and documents confirming such other assurances as Creditor deems necessary or advisable for the confirmation or perfection of Creditor's rights hereunder or to otherwise effectuate the intent of this Agreement.

15. Obligor shall and does hereby indemnify and save Creditor, its officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims actions, proceedings, judgments, settlements, losses, fines and obligations (each an "Indemnified Claim,"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and at Creditor's sole option shall defend Creditor against any Indemnified Claim, at Obligor's sole expense with counsel selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Equipment so as to incur any liability or obligation for or on behalf of Creditor.

16. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT, ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID. Creditor may, without notice, transfer or assign this Agreement or any interest herein to any assignee, pledge, encumber or transfer any of its right or interest in and to or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest ion this Agreement and upon such assignment Obligor agrees not to assert against any of such transferees, assignees, mortgagees or pledge any defense, claim commercialism or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice. Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement, Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would deem to materially affect the Obligor's interest.

17. As used in this Agreement, the term "Event of Default" shall mean any one or more of the following: (aa) the failure by Obligor to make any payment when due hereunder or the failure by a Debtor (as hereinafter defined) to pay when due any of the Liabilities (as hereinafter defined); (b) the failure by a Debtor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Debtor or otherwise relating to any of the Liabilities (collectively, the "Other Documents") or (ii) any other obligation of a Debtor to Creditor; (c) any representation or warranty assumed by or on behalf of any Debtor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made; (d) the making by a Debtor of any misrepresentation to Creditor or the consequent inaccuracy herewith or at any time prior or subsequent to the execution hereof; (e) the breach by a Debtor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor hereunder; (f) an default in the payment of any indebtedness owed to any individual or entity other than Creditor, or an default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof); (g) the failure of a Debtor to pay, withhold collect or mark when asserted or due any tax, assessment or other sum payable with respect to the Equipment or any security for any of the Liabilities (including, without limitation, any premium on any insurance policy with respect to any of the Equipment or any security for any of the Liabilities), or the making of any lax.

INITIAL [signature]

Assessment against any Debtor by the United States or any state or local government; (h) the entry of judgment against a Debtor or any attachment, levy or execution against any property of a Debtor, or the condemnation or seizure of any part of any property of a Debtor by any governmental authority or court at the insistence of of a Debtor, if a partnership or joint venture; (i) the change in control, management, ownership or operations of a Debtor, or the suspension of the usual business of a Debtor, or the dissolution, liquidation or other termination of existence of a Debtor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Debtor, or the sale of material assets of an Obligor; (k) the failure of a Debtor (or any admission in writing by a Debtor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Debtor; (l) the filing of an application for the appointment of trustee, custodian or receiver for a Debtor or any part of a Debtor's property, or an assignment for the benefit of creditors by a Debtor, or the making or sealing of notice of any intended bulk transfer by a Debtor; (m) the filing of a petition in bankruptcy by or against a Debtor, or the commencement by or against a Debtor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statue, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness, (n) such a change in the condition or affairs (financial or otherwise) of a Debtor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Equipment or any of the Liabilities or any security therefor. Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Entire Term (discounted to its present value at a discount rate of 6% as of the date of default) hereof shall be at once due and payable; and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sea, lease, or otherwise dispose of the Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit as Creditor deem advisable, on at least ten (10) days prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Entire Term of this Agreement, and/or (iii) require Obligor to assemble all Equipment at Obligor's sole expense, the Creditor's Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of reposing, storing repairing and preparing Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Entire Term of the Agreement, any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this paragraph 17 shall be deemed liquidated damages for the breach hereof and not a penalty. Any amount due Creditor under this paragraph 17 shall be deemed liquidated damages for the breach hereof and not a penalty. Any amount due Creditor under this paragraph 17 shall be deemed cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on future occasion.

For purposes of this Agreement, (a) the term "Debtor" shall mean Obligor and any guarantor, pledgor or hypothecator, and any other party liable for any of the Liabilities of Obligor in addition to Obligor and (b) the term "Liabilities" shall mean all liabilities and obligations of any kind of all Debtors (or any partnership, joint venture or other group of which said Debtor is a member) to Creditor whether (i) for the account of Creditor, or as agent for others, (ii) acquired directly or indirectly by Creditor from Obligor or otherwise, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortuous or now existing or hereinafter arising, or (iv) incurred by an Debtor as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses and attorney's fees, incurred by Creditor in connection with any such liabilities or obligations or any security therefor.

18. Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payments due date, Obligor agrees to pay Creditor on demand, as liquidated damages and not as a penalty, (a) with respect to payments administrative due equal to five cents ($.05) for each one dollar ($1.00) as such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever is less, from the date such payment is due until the date such payment is made in full to Creditor. Such amount(s) shall be payable in addition to all amounts payable Obligor as a result of

exercise of any of the remedies herein provided. Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement

19. Obligor agrees that this Agreement is irrevocable for the Entire Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law. Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Equipment from Seller. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request. Obligor warrants that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms and that no provision of this Agreement is inconsistent with Obligor's charter, by laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or conflict with an applicable law, rule or regulation, and no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement. Obligor shall not change its name or its address without providing Creditor with at least thirty (30) days prior written notice thereof.

20. Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Equipment which may arise or become due during the term of this Agreement, whether or not specifically mentioned herein. No periodic installment or other sums payable to Obligor pursuant to this Agreement shall be subject to set-off deduction, counterclaim, abatement, recoupment or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Equipment or any item thereof, whether the same shall be lawful or unlawful, any dispossession of Obligor from the Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statue or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injection or by any private person, of the Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

4

INITIAL _D___S___

CONNECTION WITH THIS AGREEMENT SHALL BE LITIGATED ONLY IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS OR SUCH OTHER FORUM AS CREDITOR SHALL ELECT. Obligor consents to the jurisdiction and venue of the foregoing courts and consents that any process or notice of motion or other application to either of such courts or a judge thereof may be served inside or outside the state of Creditor's principal place of business by registered or certified mail, return receipt request, directed to Obligor at its address set forth in this Agreement (and service as made shall be deemed complete five (5) days after the same has been posted as aforesaid) or by the personal service, or in such other manner as may be permissible under the rules of such courts. Obligor appoints each and every officer of Creditor as agent for the purpose of accepting service off any process within the state of Creditor's principal place of business, subject only to the condition that the officer promptly mail a copy of that process to Obligor at its address for notices hereunder.

22. EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUR OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OBLIGOR AND CREDITOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OBLIGOR AND CREDITOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

23. Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other. Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire actual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-408 of the u.c. or otherwise, to file financing statements covering the Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

24. THIS AGREEMENT SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO PRINCIPALS OF CONFLICT OF LAW OR CHOICE OF LAW. This Agreement shall not become effective until accepted by Creditor at its above-described office, and upon such acceptance shall, subject to paragraph 15 hereof, inure to and bind the parties, their successors, legal representatives and assigns. No provision hereof that may be construed as unenforceable shall in any way invalidate any other provision hereof, all of which shall remain in full force and effect. All representations, warranties, indemnities, and agreements of Obligor contained in this Agreement shall survive and continue in full force and effect notwithstanding terminations or expiration of this Agreement.

No agent or employee of Seller is authorized to bind Creditor to this Agreement, or to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to Seller or any agent or employee of Seller. THE UNDERSIGNED AGREE TO ALL TERMS AND CONDITIONS SET FORTH ABOVE AND IN WITNESS THEREOF HEREBY EXECUTE THIS AGREEMENT.

CREDITOR:

ROCKLAND LEASE FUNDING CORP

By: _____

    Robin Rice, Asst Secretary

Accepted at its office listed above _____

OBLIGOR:

D. MCSWEENEY & SON

The undersigned warrants that he is a duly authorized corporate officer, partner or proprietor of the above named Obligor.

By: _____

Title: OWNER.

## SCHEDULE "A"

This schedule is attached to and becomes part of Security Agreement, Conditional Sales Contract, Chattel Mortgage, Lease or _____ dated DECEMBER 21, 2000 between the undersigned.

| QUANTITY | DESCRIPTION OF EQUIPMENT (indicate whether "new" or "used") | YEAR & MODEL | SERIAL NO. |
|----------|--------------------------------------------------------------|--------------|------------|
| ONE (1) 1998 INTERNATIONAL 4700 TRUCK VIN# 1HTSLAAM7WH522760 | | | |

EQUIPMENT MORTGAGED BY DEBTOR PURSUANT TO A CHATTEL MORTAGE DATED **DECEMBER 21, 2000** ("THE CHATTEL MORTAGE") BETWEEN **ROCKLAND LEASE FUNDING CORP** AS CREDITOR, AND **DAVID MCSWEENEY DBA D. MCSWEENEY & SON** AS OBLIGOR, INSURANCE THEREON AND ALL PROCEEDS OF ANY NATURE THEREOF.

LOCATION OF EQUIPMENT 105 HOLMES STREET, DORCHESTER, MA 02122

THIS SCHEDULE IS HEREBY VERIFIED CORRECT AND UNDERSIGNED PURCHASER(S), MORTGAGOR(S) OR LESSEE(S) ACKNOWLEDGES RECEIPT OF A COPY.

Secured Party/Seller/Mortgagee/Lessor:
**ROCKLAND LEASE FUNDING CORP.**

BY: _____
    ROBIN RICE, Asst. Secretary

Debtor/Purchaser/Mortgagor/Lessee:
**DAVID MCSWEENEY DBA**
**D. MCSWEENEY & SON**

BY: X _____
TITLE: X _____

# EXHIBIT "B"

345988001

## NOTICE AND ACKNOWLEDGMENT
## (CHATTEL MORTGAGE)

POOR
ORIGINAL

This Notice and Acknowledgement is made among **GENERAL ELECTRIC CAPITAL CORPORATION** ("Lender"), **ROCKLAND LEASE FUNDING CORP.** ("Creditor") and **DAVID MCSWEENEY DBA D. MCSWEENEY & SON** ("Obligor") as of **DECEMBER 21, 2000** concerning the Chattel Mortgage dated as of **DECEMBER 21, 2000** (the "Chattel Mortgage") between Creditor and Obligor.

### NOTICE

Creditor hereby notifies and directs Obligor that:

A.  By a Collateral Assignment, Creditor has assigned or will assign to Lender all of its rights (but none of its obligations) under the Chattel Mortgage, commencing with the payment due thereunder on *2-4-01* 2000 (the "Assignment Date"). All payments due prior to such date shall be payable to Creditor. In addition, Creditor has assigned to Lender its first priority security interest in all equipment subject to the Chattel Mortgage ("the Equipment").

B.  Until further notice to the contrary from Lender to Obligor, all chattel mortgage payments and any other payments due on and after the Assignment Date under the Chattel Mortgage ("Monies") shall be paid by the date due directly by Obligor to Lender at the following address:

GENERAL ELECTRIC CAPITAL
CORPORATION
196 MOTOR PARKWAY
HAUPPAUGE, NY 11788

### ACKNOWLEDGMENT

Obligor acknowledges to Lender that: (i) the initial term of the Chattel Mortgage is 48 months, commencing on _____ and ending on _____ 2000 ; (ii) the regular monthly payment is $1215.00 exclusive of applicable taxes, is due and payable on the

345986001

day of each month during the term, and there are  45 consecutive monthly payments in the above amount remaining, beginning with the payment due on the Assignment Date; (iii) there are no additional agreements between Obligor and Creditor relating to the Equipment; (iv) the Chattel Mortgage is in full force and effect; (v) the Equipment has been delivered to and accepted by Obligor, has been installed and is operational and is in its possession and control at **105 HOLMES STREET, DORCHESTER, MA 02122** (vi) it consents to the assignment herein by Creditor and will remit and deliver all Monies directly to Lender at the address set forth above; (vii) it will deliver copies of all notices relating to the Chattel Mortgage to the Lender at the address set forth above; and (viii) it will not enter into any agreement amending, modifying or terminating the Chattel Mortgage without the prior written consent of Lender, and any such attempted agreement shall be void; and (ix) Obligor's obligation to pay chattel mortgage payments and other sums due under the Chattel Mortgage is absolute and unconditional and shall not be subject to any defense, offset counterclaim or right of recoupment.

IN WITNESS WHEREOF, the parties hereto have caused this Notice and Acknowledgment to be executed by their duly authorized officers as of **DECEMBER 21, 2000.**

ROCKLAND LEASE FUNDING CORP.

BY

Name: *Robin Rice*
Its: *Asst. Secretary*

**DAVID MCSWEENEY DBA D. MCSWEENEY & SON**

BY:
Its:

# EXHIBIT "C"

THIS SPACE FOR USE OF FILING OFFICER

345988001

# FINANCING STATEMENT — FOLLOW INSTRUCTIONS CAREFULLY
This Financing Statement is presented for filing pursuant to the Uniform Commercial Code and will remain effective, with certain exceptions, for 5 years from date of filing.

| A. NAME & TEL. # OF CONTACT AT FILER (optional) | B. FILING OFFICE ACCT. # (optional) |
|---|---|

C. RETURN COPY TO:  (Name and Mailing Address)

D. OPTIONAL DESIGNATION (if applicable):  ☐ LESSOR/LESSEE  ☐ CONSIGNOR/CONSIGNEE  ☐ NON-UCC FILING

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b)**

1a. ENTITY'S NAME

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| MCSWEENEY | DAVID | | |

| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 105 Holmes Street | Dorchester | MA | USA | 02122 |

| 1d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL I.D.#, if any | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b)**

2a. ENTITY'S NAME

OR  David McSweeney & Son

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 105 Holmes Street | Dorchester | MA | USA | 02122 |

| 2d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL I.D.#, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME - insert only one secured party name (3a or 3b)**

3a. ENTITY'S NAME

OR  General Electric Capital Corporation'

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 190 Motor Parkway | Hauppauge, | NY | USA | 11788 |

**4. This FINANCING STATEMENT covers the following types or items of property:**

See Schedule "A" attached hereto and made a part thereof.

L1638872-8

# 111-574-00

| 5. CHECK ☐ This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest | 7. If filed in Florida (check one) |
|---|---|
| BOX (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the | ☐ Documentary stamp tax paid ☐ Documentary stamp tax not applicable |
| If applicable: debtor's location was changed to this state, or (b) in accordance with other statutory provisions (additional data may be required) | |

6. REQUIRED SIGNATURE(S)

David McSweeney dba D. McSweeney & Son

| 8. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS  Attach Addendum | (if applicable) |
|---|---|
| 9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) (ADDITIONAL FEE) (optional)  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 | |

(3) SEARCH REQUEST COPY — NATIONAL FINANCING STATEMENT (FORM UCC1) (TRANS) (REV. 12/18/95)

JULIUS BLUMBERG, INC.
62 WHITE ST., N.Y.C. 10013

THIS SPACE FOR USE OF FILING OFFICER

345966001

## FINANCING STATEMENT — FOLLOW INSTRUCTIONS CAREFULLY

This Financing Statement is presented for filing pursuant to the Uniform Commercial Code and will remain effective, with certain exceptions, for 5 years from date of filing.

**A. NAME & TEL. # OF CONTACT AT FILER** (optional)

**B. FILING OFFICE ACCT. #** (optional)

**C. RETURN COPY TO:** (Name and Mailing Address)

**D. OPTIONAL DESIGNATION** (if applicable): ☐ LESSOR/LESSEE ☐ CONSIGNOR/CONSIGNEE ☐ NON-UCC FILING

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b)

| 1a. ENTITY'S NAME | | | | | |
|---|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| McSweeney | David | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | | POSTAL CODE |
| 105 Holmes Street | Dorchester | MA | USA | | 02122 |
| 1d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | | 1g. ENTITY'S ORGANIZATIONAL I.D.#, if any |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b)    ☐ NONE

| 2a. ENTITY'S NAME | | | | | |
|---|---|---|---|---|---|
| D. McSweeney & Son | | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | | POSTAL CODE |
| 105 Holmes Street | Dorchester | MA | USA | | 02122 |
| 2d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | | 2g. ENTITY'S ORGANIZATIONAL I.D.#, if any |

**3. SECURED PARTY'S** (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME - Insert only one secured party name (3a or 3b)    ☐ NONE

| 3a. ENTITY'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 190 Motor Parkway | Hauppauge, | NY | USA | 11788 |

**4. This FINANCING STATEMENT covers the following types or items of property:**

See Schedule "A" attached hereto and made a part thereof.

**5. CHECK BOX** ☐ This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the If applicable debtor's location was changed to this state, or (b) in accordance with other statutory provisions [additional data may be required]

**7. If filed in Florida** [check one] ☐ Documentary stamp tax paid ☐ Documentary stamp tax not applicable

**6. REQUIRED SIGNATURE(S)**

David McSweeney dba D. McSweeney & Son

**8.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum    If applicable

**9.** Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) [ADDITIONAL FEE] (optional)    ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

(5) SECURED PARTY COPY — NATIONAL FINANCING STATEMENT (FORM UCC1) (TRANS) (REV. 12/18/95)

JULIUS BLUMBERG, INC. 62 WHITE ST., N.Y.C. 10013

## General Instructions for National Financing Statement (Form UCC1) (Trans)

Please type or laser-print this form. Be sure it is completely legible. Read all Instructions.

Fill in form very carefully; mistakes may have important legal consequences. Follow Instructions completely. If you have questions, consult your attorney. Filing officer cannot give legal advice.

Do not insert anything in the open space in the upper portion of this form; it is reserved for filing officer use.

When properly completed, send Filing Officer Copy, with required fee, to filing officer. If you want an acknowledgment, also send Acknowledgment Copy, otherwise detach. If you want to make a search request, complete item 9 and send Search Request Copy, otherwise detach. Always detach Debtor and Secured Party Copies.

If you need to use attachments, use 8-1/2 X 11 inch sheets and put at the top of each additional sheet the name of the first Debtor, formatted exactly as it appears in item 1 of this form; you are encouraged to use Addendum (Form UCC1Ad).

### Item Instructions

1. **Debtor name:** Enter only one Debtor name in item 1, an entity's name (1a) or an individual's name (1b). Enter Debtor's exact full legal name. Don't abbreviate.

1a. **Entity Debtor.** "Entity" means an organization having a legal identity separate from its owner. A partnership is an entity; a sole proprietorship is not an entity, even if it does business under a trade name. If Debtor is a partnership, enter exact full legal name of partnership; you need not enter names of partners as additional Debtors. If Debtor is a registered entity (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed charter documents to determine correct name, entity type, and state of organization.

1b. **Individual Debtor.** "Individual" means a natural person and a sole proprietorship, whether or not operating under a trade name. Don't use prefixes (Mr., Mrs., Ms.). Use suffix box only for titles of lineage (Jr., Sr., III) and not for other suffixes or titles (e.g., M.D.). Use married woman's personal name (Mary Smith, not Mrs. John Smith). Enter individual Debtor's family name (surname) in Last Name box, first given name in First Name box, and all additional given names in Middle Name box. For both entity and individual Debtors: Don't use Debtor's trade name, D/B/A, A/K/A, F/K/A, etc. in place of Debtor's legal name; you may add such other names as additional Debtors if you wish.

1c. An address is always required for the Debtor named in 1a or 1b.

1d. Debtor's social security or tax identification number is required in some states. Enter social security number of a sole proprietor, not tax identification number of the sole proprietorship.

1e,f,g. "Additional information re entity Debtor" is optional. It helps searchers to distinguish this Debtor from others with the same or a similar name. Type of entity and state of organization can be determined from Debtor's current filed charter documents. Organizational I.D. number, if any, is assigned by the agency where the charter document was filed; this is different from taxpayer I.D. number; this should be entered preceded by the 2-character U.S. Postal identification of state of organization (e.g., CA12345, for a California corporation whose organizational I.D. number is 12345).

Note: If Debtor is a transmitting utility as defined in applicable Commercial Code, attach Addendum (Form UCC1Ad) and check box Ad6.

2. If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1. To include further additional Debtors, or one or more additional Secured Parties, attach either Addendum (Form UCC1Ad) or other additional page(s), using correct name format. Follow Instruction 1 for determining and formatting additional names.

3. Enter information, determined and formatted per Instruction 1. If there is more than one Secured Party, see Instruction 2. If there has been a total assignment of the Secured Party's interest prior to filing this form, you may provide either assignor Secured Party's or assignee's name and address in item 3.

4. Use item 4 to indicate the types or describe the items of collateral. If space in item 4 is insufficient, put the entire collateral description or continuation of the collateral description on either Addendum (Form UCC1Ad) or other attached additional page(s).

5, 6. All Debtors must sign. Under certain circumstances, Secured Party may sign instead of Debtor; if applicable, check box in item 5 and provide Secured Party's signature in item 6, and under certain circumstances, in some states, you must also provide additional date; use Addendum (Form UCC1Ad) or attachment to provide such additional data.

7. If filing in the state of Florida you must check one of the two boxes in item 7 to comply with documentary stamp tax requirements.

8. If the collateral consists of or includes fixtures, timber, minerals, and/or mineral-related accounts, check the box in item 8 and complete the required information on Addendum (Form UCC1Ad). If the collateral consists of or includes crops, consult applicable law of state where this Financing Statement is to be filed and complete Ad3b, and Ad4 if required, on Addendum (Form UCC1Ad) and, if required, check box in item 8.

9. Check box 9 to request Search Certificate(s) on all or some of the Debtors named in this Financing Statement. The Certificate will list all Financing Statements on file against the designated Debtor currently effective on the date of the Certificate, including this Financing Statement. There is an additional fee for each Certificate. This item is optional. If you have checked box 9, file copy 3 (Search Request Copy) of this form together with copies 1 and 2. Not all states will honor a search request made via this form; some states require a separate request form.

### Instructions re Optional Items A-D

A. To assist filing officers who might wish to communicate with filer, filer may provide information in item A. This item is optional.

B. If filer has an account with filing officer or is authorized to pay fees by means of a card (credit or debit) and wishes to use such means of payment, check the appropriate box and enter filer's account number in item B, or, in the alternative, filer may present this information by a cover letter.

C. Complete item C if you want acknowledgment copy returned and you have presented simultaneously a carbon or other copy of this form for use as an acknowledgment copy.

D. If filer desires to use titles of lessee and lessor, or consignee and consignor, instead of Debtor and Secured Party, check the appropriate box in item D. This item is optional. If this is not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item D, complete items 1-8 as applicable and attach any other items required under other law.

THIS SPACE FOR USE OF FILING OFFICER

345966001

**FINANCING STATEMENT** — FOLLOW INSTRUCTIONS CAREFULLY
This Financing Statement is presented for filing pursuant to the Uniform Commercial Code
and will remain effective, with certain exceptions, for 5 years from date of filing.

| A. NAME & TEL. # OF CONTACT AT FILER (optional) | B. FILING OFFICE ACCT. # (optional) |
|---|---|

C. RETURN COPY TO: (Name and Mailing Address)

| D. OPTIONAL DESIGNATION [if applicable]: | LESSOR/LESSEE | CONSIGNOR/CONSIGNEE | NON-UCC FILING |
|---|---|---|---|

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b)

| 1a. ENTITY'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| McSweeney | David | | | |
| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 105 Holmes Street | Dorchester | MA | USA | 02122 |
| 1d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL I.D.#, if any |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) ☐ NONE

| 2a. ENTITY'S NAME | | | | |
|---|---|---|---|---|
| D. McSweeney & Son | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 105 Holmes Street | Dorchester | MA | USA | 02122 |
| 2d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL I.D.#, if any |

**3. SECURED PARTY'S (ORIGINAL S.P. or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME** - insert only one secured party name (3a or 3b) ☐ NONE

| 3a. ENTITY'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 190 Motor Parkway | Hauppauge, | NY | USA | 11788 |

**4. This FINANCING STATEMENT covers the following types or items of property:**

See Schedule "A" attached hereto and made a part thereof.

| 5. CHECK BOX | This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions (additional data may be required) | 7. If filed in Florida (check one) ☐ Documentary stamp tax paid ☐ Documentary stamp tax not applicable |
|---|---|---|

| 6. REQUIRED SIGNATURE(S) | 8. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS Attach Addendum |
|---|---|
| David McSweeney dba D. McSweeney & Son | 9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) (ADDITIONAL FEE) (optional) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |

(4) DEBTOR COPY — NATIONAL FINANCING STATEMENT (FORM UCC1)(TRANS) (REV. 12/18/95)

JULIUS BLUMBERG, INC.
62 WHITE ST., N.Y.C. 10013

# EXHIBIT "D"

ROCKLAND LEASE FUNDING [illegible]
154 DITCH RO[illegible]
SO. NEW BERLIN, NY 138[illegible]

Personal Guaranty:

Guaranty made and delivered, **DECEMBER 21, 2000** by the undersigned person hereinafter herein called Guarantor, to ROCKLAND LEASE FUNDING CORP [illegible] called "Creditor, on behalf of DAVID MCSWEENEY DBA D. MCSWEENEY & SONS, herein called "Debtor"

In order to induce Creditor to grant to Debtor such credit (which term shall include loans or leases to Debtor) all of which is to the economic benefit and advantage of Guarantor, at such times, in such amounts, on such terms, and with or without security, as Creditor may in its discretion see fit, without notice to or consent from Guarantor, and in consideration thereof, Guarantor hereby unconditionally, absolutely and irrevocably guarantees that irrespective of the genuineness, validity or enforceability of any document relating to such credit or of Debtor's obligations in respect thereof, whether now existing or hereafter arising (herein called "Liabilities") and [illegible] of the existence, validity or [illegible] of any security, Debtor will promptly and fully pay and perform all obligations with respect to the Liabilities [illegible] and other charges, when due (whether at maturity or earlier by acceleration or otherwise). Guarantor consents that from time to time, without notice to or further consent of Guarantor and without releasing or affecting its liability hereunder, the time for payment or performance may be extended or [illegible] any security [illegible] released, enforced, sold, leased or otherwise dealt with without notice to or further assent from Guarantor and without releasing or affecting his liability [illegible] any other Guarantor be exchanged, released, enforced, sold, leased or otherwise dealt with, the performance of any Liabilities may be cancelled, compromised, modified or waived, [illegible] may be [illegible], and any assignments may be granted Debtor, as Creditor may in its discretion determine. Guarantor waives and consents to the non-perfection [illegible] other dealing with any security interest or liens at any time granted to Creditor as security for any of the Liabilities. No payment by Guarantor [illegible] entitle Guarantor to be subrogated to any of the rights of Creditor, other than as [illegible] in the next paragraph below. Guarantor shall have no right of reimbursement or [illegible] whatsoever and no right of recourse to or with respect to any assets or property of Debtor or to any security for the Liabilities unless and until the Liabilities have been paid in full, [illegible] than as waived in the next paragraph below.

Guarantor hereby [illegible] and irrevocably waives and releases any and all claims (as defined in and under Section 101(4) of Title United States Code) against Debtor now or hereafter arising out of or related directly or indirectly to any of the obligations of Guarantor under this Guaranty or any Liabilities of Debtor to Creditor, including [illegible] limitation, any and all such claims arising from rights of subrogation, indemnity, reimbursement, contribution or set-off of guarantor against Debtor, whether arising by contract or otherwise.

If any payment received by Creditor from any source on account of the Liabilities is set aside or required to be repaid [illegible] in any bankruptcy proceeding or [illegible] Guaranty shall remain in full force and effect (or be reinstated) until Creditor has received and retained full payment of all the Liabilities, and Guarantor agrees [illegible] upon demand. Guarantor agrees that it will not transfer any [illegible] to any party (except gifts [illegible]) without full and reasonable consideration [illegible] or Guarantor shall at any time become insolvent or make a general assignment or if a petition in bankruptcy or any insolvency or reorganization proceeding [illegible] commenced by [illegible] Liabilities shall, at the sole option of Creditor [illegible] become due and payable against or in respect of Guarantor or Debtor any or all of Guarantor's obligations in respect of the Liabilities [illegible] without notice. Guarantor agrees that Creditor may enforce the Liabilities without resorting first to any other right, remedy or security and the [illegible] any [illegible] of any security [illegible] against Debtor. This Guaranty cannot be terminated or changed [illegible] hereof may be modified or waived except in writing by Creditor [illegible] effect [illegible] Creditor receives written notice of termination [illegible] liability with respect to Liabilities thereafter created and any extensions and renewals thereof, and it is a guaranty of payment and not one of collection. This Guaranty shall be binding upon Guarantor, jointly and severally if more than one, and his respective heirs, representatives, successors and assigns in favor of Creditor, its successors and assigns. GUARANTOR HEREBY WAIVES PRESENTMENT, NOTICE OF DISHONOR AND PROTEST, NOTICE OF DEFAULT BY DEBTOR, OF SALE OR OTHER DISPOSITION OF ANY SECURITY AND ANY OTHER NOTICE TO WHICH GUARANTOR MIGHT OTHERWISE BE ENTITLED, [illegible] TRIAL, THE RIGHT TO INTERPOSE [illegible] COUNTERCLAIM OR CONSOLIDATE ANY OTHER ACTION WITH AN ACTION ON THIS GUARANTY AND THE BENEFIT OF ANY STATUTE OF LIMITATIONS AFFECTING ITS LIABILITIES HEREUNDER OR THE ENFORCEMENT THEREOF.

GUARANTOR HEREBY SUBMITS TO THE JURISDICTION [illegible] STATE COURTS IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, IN ANY ACTION OR PROCEEDING [illegible] UNDER THIS GUARANTY [illegible] [illegible] ACTION OR PROCEEDING IN SUCH JURISDICTION AND VENUE. GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS [illegible] IN ANY SUCH ACTION OR PROCEEDING SHALL BE SUFFICIENT [illegible] GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH BELOW [illegible] SERVICE SO MADE SHALL BE [illegible] COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID.

THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE [illegible] REGARD TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW.

The Guaranty has been duly executed by Guarantor on the [illegible]

**Dated: DECEMBER 21, 2000**

[signature]

X [signature]

DAVID MCSWEENEY (Name of Guarantor)

105 HOLMES STREET

DORCHESTER, MA 02122

(Address of Guarantor)

**SS#: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**

**Home #:** X 617-799-4829

STATE OF X MASS COUNTY OF X SS X

On the X 22 day of X Dec 2000 before me personally came **DAVID MCSWEENEY** to me known to be t[illegible] individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

ROCKLAND LEASE FUNDING CORP.
154 DITCH ROAD
SO. NEW BERLIN, NY 13843

Personal Guaranty

Guaranty made and delivered, **DECEMBER 21, 2000** by the undersigned parties hereto herein called Guarantor, to ROCKLAND LEASE FUNDING CORP. herein called 'Creditor, on behalf of DAVID MCSWEENEY DBA D. MCSWEENEY & SON., herein called "Debtor"

In order to induce Creditor to grant to Debtor such credit (which term shall include loans or leases to Debtor) all of which is to the economic benefit or advantage of Guarantor, at such time, in such amounts, on such terms, and with or without security, as Creditor may in its discretion see fit, without notice to or consent from Guarantor, and in consideration thereof, Guarantor hereby unconditionally, absolutely and irrevocably guarantees that irrespective of the genuineness, validity or enforceability of any document relating to such credit or of Debtor's obligations in respect thereof, whether now existing or hereafter arising (herein called "Liabilities" ) and of the existence, validity or value of any security. Debtor will promptly and fully pay and perform all obligations with respect to the Liabilities of any security therefor, with interest and other charges, when due (whether at maturity or earlier by acceleration or otherwise). Guarantor consents that from time to time, without notice to or further consent from Guarantor and without releasing or affecting its liability hereunder, the time for payment or performance may be extended or accelerated in whole or part any security may be exchanged released, enforced, sold, leased or otherwise dealt with without notice to or further consent from Guarantor and without releasing or effecting his liability here hereunder, any security may be exchanged, released, enforced, sold, leased or otherwise dealt with, the provisions of any documents may be cancelled, compromised, modified or waived, any other Guarantor or party may be released, and any indulgence may be granted Debtor, as Creditor may in its discretion determine. Guarantor waives and consents to the non-perfection, lapse or disposition of or other dealing with any security interest or liens at any time granted to Creditor as security for any of the Liabilities. No payment by Guarantor except payment in full of the Liabilities shall entitle Guarantor to be subrogated to any right of Creditor, other than as waived in the next paragraph below. Guarantor shall have no right of reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Debtor or to any security for the liabilities unless and until the Liabilities have been paid in full, other than as, waived in the next paragraph below.

Guarantor hereby unconditionally and irrevocably waives and releases any and all claim (as defined in and under Section 1010(4) of Title United States Code) against Debtor now or hereafter arising out of or related directly or indirectly to any of the obligations of Guarantor under this Guaranty or any liabilities Of Debtor to Creditor, including (without limitation) any and all such claims arising from rights of subrogation, indemnity, reimbursement, contribution or set-off of guarantor against Debtor, whether arising by contract or otherwise.

If any payment received by Creditor from any source on account of the Liabilities is set aside or required to be repaid, whether in any bankruptcy proceeding or otherwise, this Guaranty shall remain in full force and effect (or be reinstated) until Creditor has received and retained full payment of all the Liabilities; and Guarantor agrees to pay any such amount upon demand. Guarantor agrees that it will not transfer any personal assets to any party (except gifts of nominal value) without full and valuable consideration for such transfer. If Debtor or Guarantor shall at any time become insolvent or make a general assignment or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of Guarantor or Debtor, any or all of Guarantor's obligations in respect of the Liabilities shall, at the sole option of Creditor, forthwith become due and payable without notice. Guarantor agrees that Creditor may enforce the Liabilities without resorting first to any other right, remedy of security and the Liabilities shall, unless paid in full, survive any representation of any security, whether or not such action constitutes an election of remedies against Debtor. This Guaranty cannot be terminated or changed orally and no provision hereof may be modified or waived except in writing by Creditor, it shall continue in effect until Creditor receives written notice of termination, which shall not release or affect Guarantor liability with respect to Liabilities theretofore created and any extensions and consolidations thereof, and it is a guaranty of payment and not one of collection. This Guaranty shall be binding upon Guarantor, jointly and severally if more than one, and his or his respective heirs, representatives, successors and assigns in favor of Creditor, its successors and assigns GUARANTOR HEREBY WAIVES PRESENTMENT, NOTICE OF DISHONOR AND PROTECT, NOTICE OF DEFAULT BY DEBTOR, OF SALE OR OTHER DEALING WITH ANY SECURITY AND OTHER NOTICE TO WHICH GUARANTOR MIGHT OTHERWISE BE ENTITLED, JURY TRIAL THE RIGHT TO INTERPOSE ANY COUNTERCLAIM OR CONSOLIDATE ANY OTHER ACTION WITH AN ACTION ON THIS GUARANTY, AND THE BENEFIT OF ANY STATUTE OF LIMITATIONS AFFECTING ITS LIABILITIES HEREUNDER OR THE ENFORCEMENT HEREOF.

GUARANTOR HEREBY SUBMITS TO THE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, IN ANY ACTION OR PROCEEDING BROUGHT UNDER THIS GUARANTY (IF CREDITOR CHOOSES TO BRING ANY SUCH ACTION OR PROCEEDING IN SUCH JURISDICTION AND VENUE), GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS (OR A JUDGE THEREOF) IN ANY SUCH ACTION OR PROCEEDING SHALL BE SUFFICIENTLY SERVED or SENT TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH BELOW (AND SERVICE SO MADE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID).

THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE WITH OUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW.

This Guaranty has been duly executed by Guarantor on the date set forth above.

Dated: **DECEMBER 21, 2000**

SS#: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

X _____

**DAVID MCSWEENEY** (Name of Guarantor)

**105 HOLMES STREET**

Home #: X

**DORCHESTER, MA 02122**

(Address of Guarantor)

STATE OF X                    COUNTY OF X                    SS X

On the X _____ day of X _____, 2000 before me personally came **DAVID MCSWEENEY** to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

# EXHIBIT "E"

# BARRON & STADFELD, P.C.

ATTORNEYS AT LAW
50 STANIFORD STREET
SUITE 300
BOSTON, MASSACHUSETTS 02114-2506
(617) 723-9800
(800) 433-3530
FACSIMILE: (617) 523-8359

BARRON@BARRONSTAD.COM

HERTZ H. HENKOFF
ELLIOTT J. MAHLER
WILKINS AND BEYOUNG
OF COUNSEL

LEO DUNN (1820-1990)

CAPE COD OFFICE
250 WINTER STREET
HYANNIS, MASSACHUSETTS 02601
(508) 778-6622

DIRECT DIAL NUMBER:
617-531-6576

June 17, 2004

**VIA FACSIMILE AND REGULAR MAIL**

Philip S. Levoff, Esquire
Law Offices of Philip S. Levoff
1172 Beacon Street, Ste.202
Newton, MA 02461-1150

   *Re:*   *105 Homes Avenue Dorchester, MA (Van Dam)*

Dear Phil:

   I am writing in response to your June 11, 2004 letter requesting a payoff figure and estimation of the surplus that can be expected after the sale closes. The payoff figure through July 19, 2004 is as follows:

- $ 90,068.08 Principal
- $ 27,115.00 Interest, late charges and insufficient fund fees
- $ 102,932.41 taxes
- $ 4,500.00 legal fees to Hogan, Roach & Malone
- $ 10,794.00 Auctioneer fees and costs to Paul Saperstein
- $ 6,174.10 Foreclosure fees to B&S
- $ 2,923.65 Foreclosure costs to B&S
- $ 1,853.30 Bankruptcy fees to B&S
- $ 12.75 Bankruptcy costs to B&S
- $ 500.00 anticipate future fees and costs prior to closing to B&S

Total Estimated Payoff:         $246,873.29

Sale Price:         $310,000.00
Surplus:            $63,126.71

   If you have any questions, please do not hesitate to contact me at your convenience.

   Thank you.

                              Very truly yours,

                              BARRON & STADFELD, P.C.

                              Rachel Davis Baime

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
C.A. No.

GENERAL ELECTRIC COMMERCIAL           )
EQUIPMENT FINANCING, a division of    )
GENERAL ELECTRIC CAPITAL CORPORATION  )
                                      )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
DAVID M. MCSWEENEY, individually,     )
and DAVID M. MCSWEENEY, d/b/a         )
D. MCSWEENEY AND SONS, INC.,          )
                                      )
        Defendant,                    )
                                      )
and                                   )
                                      )
BARRON & STADFELD, P.C.,              )
                                      )
        Reach and Apply               )
        Defendant.                    )
                                      )

## AFFIDAVIT OF KATHERINE M. SANZA

I, Katherine M. Sanza, state that the following facts are based upon my personal knowledge, information and belief, and in so far as facts are stated upon information and belief, I believe the information to be true:

1.  I am a Litigation Specialist for General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation (hereinafter "GECC").

1

2.   My responsibilities as a Litigation Specialist include administering the lease and security agreement and collateral underlying the lease that is the subject of this action.

3.   On or about December 22, 2000, David McSweeney d/b/a David McSweeney & Son ("McSweeney") executed a certain Chattel Mortgage and related agreements (hereinafter "Lease Contract") whereby Rockland Lease Funding Corp. ("Rockland") financed McSweeney's lease of One (1) 1998 International 4700 Truck, Vin#1HTSLAAM7WH522760, (hereinafter "Truck"). The aggregate principal amount financed by Rockland for the purchase of the Truck ($40,500.00), as set forth in the Lease Contract. A true and accurate copy of the Lease Contract, including the applicable Promissory Note, Security Agreement and Security Agreement for Cash Collateral is attached hereto as Exhibit "A" and incorporated herein.

4.   On or about December 21, 2000, GECC, Rockland and McSweeney executed a Notice and Acknowledgement agreement whereby Rockland assigned to GECC all of its rights under the Lease Contract. A true and accurate copy of the Notice and Acknowledgement is attached hereto as Exhibit "B" and incorporated herein.

5.   GECC uses a standard chattel mortgage agreement in all of its leasing transactions. The standard chattel mortgage

2

agreement is identical to the Lease Contract executed by McSweeney in favor of Rockland. A true and accurate copy of the standard chattel mortgage agreement is attached hereto as Exhibit "B" and incorporated herein.

6. Pursuant to the terms of the Lease Contract, McSweeney agreed to make forty-eight (48) consecutive equal monthly installment payments to GECC of One Thousand Two Hundred and Fifteen Dollars and No Cents ($1,215.00) due and payable on the ninth day of each month, beginning on February 4, 2001.

7. As partial consideration for Rockland and GECC extending credit to McSweeney, and pursuant to the terms of the Lease Contract and Notice and Acknowledgement, McSweeney granted GECC a first position security interest in the Truck. Copies of the filed Uniform Commercial Code Financing Statements (both state and local filings) are attached hereto as Exhibit "C" and incorporated herein.

8. As partial consideration for Rockland and GECC extending credit to McSweeney, David McSweeney, individually executed a Personal Guaranty guaranteeing the payment and other obligations of McSweeny to GECC under the Lease Contract. A true and accurate copy of the Personal Guaranty executed by David McSweeney is attached hereto as Exhibit "D" and incorporated herein.

9.  According to GECC's records, McSweeney has not made a monthly rental payment on the Truck since December, 2002.

10.  Accordingly, McSweeney is presently in default for twenty-one (21) monthly rental payments due under the Lease Contract.  The amount past due as of October 1, 2004 is $31,275.50, plus accruing interest and late charges.

11.  GECC has provided oral and written notice to McSweeney of the default and his payment obligations under the Lease Contract.

12.  Notwithstanding GECC's oral and written demands, McSweeney has failed and refused to pay the monthly payment obligations due and owing to GECC under the Lease Contract.

13.  McSweeney's failure to make monthly rental payments when due constitutes an event of default under paragraph 17 of the applicable Security Agreement for the Truck and entitles GECC to declare all obligations immediately due and payable and take immediate possession of the Truck pursuant to paragraph 17 of such Security Agreement.

14.  The Truck has been repossessed and has a fair market value of $20,000.00.

15.  As of October 1, 2004, the amount due and owing GECC is $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

4

16.   To the best of my knowledge, neither McSweeney nor David McSweeney, individually has any defense to the amount claimed to be due and owing to GECC.

17.   Neither GECC nor I know of any liability insurance or bond available to satisfy any judgment GECC may obtain against McSweeney and/or David McSweeney, individually in this action.

SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5th the DAY OF OCTOBER, 2004.

Katherine M. Sanza
Litigation Specialist

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
C.A. No.

---

GENERAL ELECTRIC COMMERCIAL
EQUIPMENT FINANCING, a division of
GENERAL ELECTRIC CAPITAL CORPORATION

    Plaintiff,

v.

DAVID M. MCSWEENEY, individually,
and DAVID M. MCSWEENEY, d/b/a
D. MCSWEENEY AND SONS, INC.,

    Defendant,

and

BARRON & STADFELD, P.C.,

    Reach and Apply
    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**MOTION FOR SPECIAL PROCESS
SERVER**

---

Plaintiff General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation ("GECC"), hereby moves this Court, pursuant to Mass. R. Civ. P. 4(c), for the appointment of Nelson Goldin & Associates of Framingham, Massachusetts, as process server in this action. The undersigned swears that to the best of his knowledge and belief the person to be appointed process server is a Constable who is experienced in the service of process, is 18 years of age or over and is not a party to this action.

Respectfully submitted,

General Electric Commercial Equipment
Financing, a division of General
Electric Capital Corporation

By its attorneys,

E. a. Howard

Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18ᵗʰ, 2004

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                                   C.A. No.

```
                                        )
GENERAL ELECTRIC COMMERCIAL            )
EQUIPMENT FINANCING, a division of     )
GENERAL ELECTRIC CAPITAL CORPORATION   )
                                        )
                                        )
      Plaintiff,                        )
                                        )
v.                                      )
                                        )
DAVID M. MCSWEENEY, individually,      )   MOTION FOR SHORT ORDER
and DAVID M. MCSWEENEY, d/b/a          )   OF NOTICE
D. MCSWEENEY AND SONS, INC.,           )
                                        )
      Defendant,                        )
                                        )
and                                     )
                                        )
BARRON & STADFELD, P.C.,               )
                                        )
      Reach and Apply                   )
      Defendant.                        )
                                        )
```

Plaintiff General Electric Commercial Equipment
Financing, a division of General Electric Capital
Corporation ("GECC") moves for a Short Order of Notice and
a hearing on its Motion for Equitable Attachment.  In
further support of this motion, GECC submits the Complaint,
Motion for Equitable Attachment and accompanying memorandum
of law filed herewith.

Wherefore, GECC moves this Court to set a hearing on
this matter for Monday, October 25, 2004.

Respectfully submitted,

General Electric Commercial
Equipment Financing, a division of
General Electric Capital
Corporation

By its attorneys,

Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18ᵗʰ, 2004

2

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                          SUPERIOR COURT
                                                     C.A. No.

| | |
|---|---|
| GENERAL ELECTRIC COMMERCIAL EQUIPMENT FINANCING, a division of GENERAL ELECTRIC CAPITAL CORPORATION<br><br>    Plaintiff,<br><br>v.<br><br>DAVID M. MCSWEENEY, individually, and DAVID M. MCSWEENEY, d/b/a D. MCSWEENEY AND SONS, INC.,<br><br>    Defendant,<br><br>and<br><br>BARRON & STADFELD, P.C.,<br><br>    Reach and Apply<br>    Defendant. | PLAINTIFF'S MOTION FOR REACH AND APPLY ATTACHMENT |

Plaintiff General Electric Commercial Equipment Financing, a division of General Electric Capital Corporation ("GECC"), hereby moves, pursuant to G.L. c. 214, §3(6) and Count VI and Prayers One, Two, Three, and Four of the Complaint, for a reach and apply attachment in the amount of $15,000.00 to secure an undisputed debt against the defendants David M. McSweeney, individually and David M. McSweeney d/b/a D. McSweeney and Sons, Inc. GECC seeks to reach, hold, and apply as payment for the expected judgment the first $15,000.00 of any beneficial interest held by David

McSweeney, individually in the net sale proceeds of the property located at 105 Homes Avenue in Dorchester, Massachusetts ("Property"). The net sale proceeds of the Property are currently being held in an escrow account by the Reach and Apply Defendant Barron & Stadfeld, P.C. ("Barron & Stadfeld"). As set forth in the Memorandum of Law in Support of Motion for Reach and Apply Attachment, the first $15,000.00 of the $63,126.71 being held in an escrow account by Barron & Stadfeld may be reached, held and applied in payment of GECC's indisputable right to satisfy the expected judgment against defendants, pursuant to G.L. c. 214, §3(6). GECC requests that the equitable reach and apply attachment contain the language in the proposed Order filed herewith, enjoining and restraining the reach and apply defendant Barron & Stadfeld from paying, transferring, or otherwise secreting to defendant David McSweeney, individually the first $15,000 of the $63,126.71 being held in an escrow account until the debt owed by David M. McSweeney individually is satisfied. GECC also requests that defendant Barron & Stadfeld be enjoined and restrained from assigning, conveying, or otherwise transferring any interest, legal or equitable, of David McSweeney, individually in the first $15,000.00 of the $63,126.71 in net sale proceeds of the Property.

GECC expects to obtain a judgment against defendants, which will remain in full force but will not be satisfied, given the

2

lack of any assets to satisfy the judgment. Other than the net sale proceeds, defendant David McSweeney, individually has no other property or assets upon which GECC can levy on execution to satisfy the expected judgment.

WHEREFORE, plaintiff GECC respectfully requests that this Court issue a reach and apply attachment containing the language requested in the proposed Order filed herewith against David McSweeney, individually and the reach and apply defendant Barron & Stadfeld and for such other and further relief as this Court deems fair and just.

Respectfully submitted,

GENERAL ELECTRIC COMMERCIAL EQUIPMENT
FINANCING, A DIVISION OF GENERAL
ELECTRIC CAPITAL CORPORATION

By its attorneys,

*E. A. Howard*

Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18th, 2004

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                      SUPERIOR COURT
                                                 C.A. No.

|  |  |
|---|---|
| GENERAL ELECTRIC COMMERCIAL<br>EQUIPMENT FINANCING, a division of<br>GENERAL ELECTRIC CAPITAL CORPORATION<br><br>         Plaintiff,<br><br>v.<br><br>DAVID M. MCSWEENEY, individually,<br>and DAVID M. MCSWEENEY, d/b/a<br>D. MCSWEENEY AND SONS, INC.,<br><br>         Defendant,<br><br>and<br><br>BARRON & STADFELD, P.C.,<br><br>         Reach and Apply<br>         Defendant. | MEMORANDUM OF LAW IN<br>SUPPORT OF PLAINTIFF'S<br>MOTION FOR REACH AND<br>APPLY ATTACHMENT |

## I.    INTRODUCTION

Plaintiff General Electric Capital Corporation ("GECC") commenced this action to collect an undisputed debt against the defendants David M. McSweeney, individually and David M. McSweeney d/b/a D. McSweeney and Sons, Inc. ("McSweeney"). GEEC has moved for an equitable attachment that seeks to reach, hold, and apply as payment for the expected judgment the first $15,000.00 of any beneficial interest of David McSweeney in the $63,126.71 of the net sale proceeds of the property located at

105 Homes Avenue in Dorchester, Massachusetts ("Property") being held in an escrow account by Barron & Stadfeld, P.C. ("Barron & Stadfeld").

## II.  FACTS

GECC is a Delaware Corporation that engages in the business of commercial financing.  On or about December 22, 2000, McSweeney executed a certain Chattel Mortgage and related agreements (hereinafter "Lease Contract") whereby Rockland Lease Funding Corp. ("Rockland") financed McSweeney's lease of One (1) 1998 International 4700 Truck, Vin#1HTSLAAM7WH522760, (hereinafter "Truck").  See Lease Contract, including the applicable Promissory Note, Security Agreement and Security Agreement for Cash Collateral attached to Affidavit of Katherine M. Sanza ("Sanza Affidavit") as Exhibit "A" to the Complaint. The aggregate principal amount financed by Rockland for the purchase of the Truck ($40,500.00), as set forth in the Lease Contract.  See Sanza Affidavit attached to the Complaint and incorporated herein.  On or about December 21, 2000, GECC, Rockland and McSweeney executed a Notice and Acknowledgement whereby Rockland assigned to GECC all of its rights under the Lease Contract.  See Notice and Acknowledgement agreement attached to the Complaint as Exhibit "B" and incorporated herein. Pursuant to the terms of the Lease Contract, McSweeney agreed to make forty-eight (48) consecutive equal monthly installment

2

payments to GECC of One Thousand Two Hundred and Fifteen Dollars and No Cents ($1,215.00) due and payable on the ninth day of each month, beginning on February 4, 2001. See Exhibit "A" to the Complaint.

As partial consideration for Rockland and GECC extending credit to McSweeney, and pursuant to the terms of the Lease Contract and Notice and Acknowledgement, McSweeney granted GECC a first position security interest in the Truck. See copies of the filed Uniform Commercial Code Financing Statements (both state and local filings) attached to the Complaint as Exhibit "C" and incorporated herein.

As partial consideration for Rockland and GECC extending credit to McSweeney, David McSweeney, executed a Personal Guaranty guaranteeing the payment and other obligations of McSweeny to GECC under the Lease Contract. See Personal Guaranty executed by David McSweeney attached to the Complaint as Exhibit "D" and incorporated herein.

McSweeney has not made a monthly rental payment on the Truck since December, 2002 and is in default. See Sanza Affidavit ¶9 attached to the Complaint and incorporated herein. As of October 1, 2004, the amount due and owing GECC is $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs. Id. at ¶10. The Truck has been repossessed and has a fair market value of $20,000.00. Id. at ¶14.

McSweeney, individually, is the Trustee and beneficiary of the MC Realty Trust ("Trust") u/d/t dated June 30, 1999 and recorded with the Suffolk County Registry of Deeds. The Trust owned real property located at 101 Homes Avenue, Dorchester, MA. In June 2004, the Trust sold the Property for $310,000.00. After all mortgages, liens and other encumbrances were paid off, the net sale proceeds totaled $63,126.71. The net sale proceeds of the Property are due and owing to David McSweeney, individually and are being held in escrow by the reach and apply defendant Barron & Stadfeld. David McSweeney and Barron & Stadfeld have refused to make any payment to GECC on the outstanding debt, which totals $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.

III. <u>ARGUMENT</u>

A.   GECC IS ENTITLED TO REACH AND APPLY ANY BENEFICIAL INTEREST OF DAVID McSWEENEY IN THE NET SALE PROCEEDS OF <u>THE PROPERTY IN SATISFACTION OF THE DEBT.</u>

To reach and apply David McSweeney's beneficial interest in the first $15,000.00 of the $63,126.71 in net sale proceeds being held in escrow by Barron & Stadfeld, GECC must demonstrate that (1) David McSweeney, individually owes GECC a debt; (2) the first $15,000.00 of the $63,126.71 in net sale proceeds is a debt due from Barron & Stadfeld to David McSweeney, individually; and (3) the first $15,000.00 of the $63,126.71 in net sale proceeds is incapable of attachment or of levy on execution. <u>See</u>

4

<u>Massachusetts Electric Co. v. Athol One, Inc.</u>, 391 Mass. 685, 687-88 (1984).

Here, GECC has satisfied all of the criteria necessary to reach and apply the first $15,000.00 of the $63,126.71 in net sale proceeds held in an escrow account by Barron & Stadfeld. First, the net sale proceeds held in escrow by Barron & Stadfeld are a "debt" under G.L. c. 214, §3.  48 Jordan L. Shapiro, Marc G. Perlin, and John M. Connors, <u>Massachusetts Practice: Collection Law</u>, § 11:7 (3rd ed. 2000) (reach and apply actions require that "the action be for payment of a 'debt'").  Second, it is undisputed that David McSweeney, individually is a guarantor of McSweeney's debt and is personally liable to GECC for $31,275.50, plus accruing interest, late charges and reasonable attorneys' fees and costs.  Even assuming that GECC is able to resell the Truck for the fair market value of $20,000.00, David McSweeney would still be liable for any deficiency. Moreover, assuming the Truck is resold for $20,000.00, the deficiency would total $11,275.55 ($31,275.50 - $20,000.00), plus accruing interest, late charges and reasonable attorneys' fees and costs.  Thus, a conservative calculation of the expected judgment against David McSweeney, individually will exceed $15,000.00 ($11,275.55 plus accruing interest at 12% per annum, attorneys' fees, late charges, and costs).  Third, it is undisputed that Barron & Stadfeld owes David McSweeney, as a

beneficiary of the Trust, a portion, if not all, of the net sale proceeds being held in an escrow account.

Finally, because GECC is seeking to satisfy a debt arising out of contract, the net sales proceeds held in escrow by Barron & Stadfeld may be reached and applied by GECC in satisfaction of the debt owed by David McSweeney, individually to GECC.  See Digney v. Blanchard, 229 Mass. 235, 239 (1918); Bethlehem Fabricators v. H.D. Watts Co., 286 Mass. 556, 563-64 (1934); 48 Jordan L. Shapiro, Marc G. Perlin, and John M. Connors, Massachusetts Practice: Collection Law, §11:15 (3rd ed. 2000). Additionally, and to GECC's knowledge, David McSweeney, individually has no other property that could be attached or taken on execution.  This Court should, therefore, grant GECC's Motion for Equitable Attachment.

B.    A BALANCING OF THE EQUITIES FAVORS GRANTING THE EQUITABLE ATTACHMENT.

The chief purpose of an attachment is to ensure that the defendant has sufficient assets to satisfy any judgment the plaintiff may reasonably be expected to recover.  United Foods, Inc. v. Richard Trading, Inc., 2002 WL 1299194 (Mass. Super.)

Here, GECC has commenced a simple action against, among others, David McSweeney, the personal guarantor who unconditionally guaranteed the payment, performance, and complete fulfillment of all the obligations of McSweeney under the Lease

Contract.  Defendants have no defenses to the amount claimed to be due and owing GECC under the Lease Contract.  A simple suit on an unconditional guaranty to which the defendant has no defense, such as this action, is ripe for summary judgment.  See Community Nat'l Bank v. Dawes, 369 Mass. 550 (1976).  Thus, there can be little doubt as to the likelihood of GECC's success on the merits and, therefore, the reach and apply attachment should be granted.

The Affidavit of Katherine Sanza of GECC filed in support of the Motion and this Memorandum of Law, clearly demonstrates that there is a reasonable likelihood that GECC will recover a judgment, including interest and costs of collection and reasonable attorney's fees, in excess of $15,000.00.

Finally, no harm will befall David McSweeney, individually should this Court grant the instant motion.  As set forth in the June 17, 2004 letter from Barron & Stadfeld to Attorney Philip Levoff, there is $63,126.71 in net sale proceeds being held in escrow by Barron & Stadfeld, which is owed to David McSweeney, individually.  See June 17, 2004 Letter, attached to the Complaint as Exhibit "E" and incorporated herein.  Accordingly, the equitable attachment sought by GECC represents less than twenty-five (25%) of the total amount of the net sale proceeds.

By contrast, there would be substantial harm to GECC should this Court not grant the instant motion.  GECC has already repossessed the Truck in a good faith effort to satisfy the debt

owed by David McSweeney, individually.  As noted above, even
assuming that GECC resells the Truck at its current fair market
value, there will still be a deficiency of $11,275.55, plus
accruing interest, late charges and reasonable attorneys' fees
and costs, for which David McSweeney, individually would be
liable.  GECC has already expended significant time and resources
in attempting to collect the debt and prosecuting this action.
Upon information and belief, the net sale proceeds are the only
assets of David McSweeney, individually from which GECC will be
able to satisfy the expected judgment.

IV.   <u>CONCLUSION</u>

GECC has satisfied the requirements necessary to establish
an equitable attachment upon the net sale proceeds being held in
escrow by Barron & Stadfeld.  On balance, the equities in the
instant matter tip squarely in GECC's favor.  Therefore, this
Court should grant GECC's Motion for Reach and Apply Attachment
and reach, hold, and apply the first $15,000.00 of the $63,126.71
net sale proceeds held in escrow by Barron & Stadfeld to secure
David McSweeney's debt to GECC.

Based upon the foregoing facts and legal authorities,
plaintiff GECC respectfully requests that this Court grant this
motion and enter the relief requested and for such other and
further relief as this Court deems fair and just.

Respectfully submitted,

GENERAL ELECTRIC COMMERCIAL EQUIPMENT
FINANCING, A DIVISION OF GENERAL
ELECTRIC CAPITAL CORPORATION

By its attorneys,

*E. A. Howard*

Charles J. Domestico
BBO No. 128390
Eric A. Howard
BBO No. 640330
DOMESTICO, LANE & MCNAMARA, LLP
The Meadows
161 Worcester Road
Framingham, MA 01701
(508) 626-9000

Dated: October 18ᵗʰ, 2004