

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No. 04-12654 GAO
Formerly Case No. 04-4389F
Suffolk Superior Court

|   |   |
|---|---|
| FRED T. VAN DAM <br> Plaintiff <br><br> v. <br><br> DAVID M. MCSWEENEY, Trustee of MC REALTY TRUST; ROCKLAND LEASE FUNDING CORP.; UNITED STATES OF AMERICA; and GENERAL ELECTRIC COMMERCIAL EQUIPMENT FINANCING, a division of GENERAL ELECTRIC CAPITAL CORP.; <br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ANSWER AND COUNTERCLAIM OF DEFENDANT DAVID M. MCSWEENEY, TRUSTEE OF MC REALTY TRUST, TO PLAINTIFF'S AMENDED COMPLAINT

### ANSWER

#### INTRODUCTION

To the extent that this paragraph calls for a response from the Defendant, the Defendant denies the same.

#### PARTIES

1. The Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

The Defendant further states that the named Plaintiff is or should be Fred T. Van Dam in his individual capacity, as the subject mortgage was granted to Mr. Van Dam solely in his individual capacity.

2. Admitted, except that the Defendant is not a "Senior" and the name of the Trust is the MC Realty Trust.

3. The Defendant admits that Rockland has a place of business in Berlin, New York, but is without sufficient knowledge or information to form a belief as to the truth of the allegation in this paragraph that Rockland is a "lending institution" and therefore denies the same.

4. Admitted.

5. The Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

6. Admitted, except that the title holder and mortgagor was the Defendant solely in his capacity as Trustee of the MC Realty Trust.

7. Admitted, except that the Defendant denies that the Plaintiff was entitled to deduct the sum of $251,038.88 from the sale proceeds.

8. Denied.

9. Admitted.

10. Denied.

11. The Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

12. Denied.

13. Denied.

14. The Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

15. Denied.

16. Denied.

## FIRST AFFIRMATIVE DEFENSE

The Plaintiff fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The Plaintiff has failed to satisfy a condition precedent to recovery under the alleged contract between the parties.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiff has failed to mitigate its damages.

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff is barred due to its acts and omissions from prevailing upon the claims in its Complaint.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff is estopped due to its acts and omissions from prevailing upon the claims in its Complaint.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiff is before this Court with unclean hands and is thus not entitled to any relief.

### SEVENTH AFFIRMATIVE DEFENSE

To the extent that the Plaintiff has any claims against the Defendant, it has waived the same.

### EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff has released the Defendant from any claims that it may have.

### NINTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrine of laches.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred due to an accord and satisfaction.

### ELEVENTH AFFIRMATIVE DEFENSE

The Plaintiff will be unjustly enriched if it is allowed to prevail on the claims in its Complaint.

### TWELFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the Statute of Frauds.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims fail for a lack of consideration.

### FOURTEENTH AFFIRMATIVE DEFENSE

There is no privity of contract between the Plaintiff and the MC Realty Trust.

### FIFTEENTH AFFIRMATIVE DEFENSE

The contract upon which the Plaintiff has brought suit is illegal because it is usurious and in violation of Mass. Gen. Laws ch. 271, § 49. As such, the contract and the obligations thereunder are void and unenforceable.

## SIXTEENTH AFFIRMATIVE DEFENSE

The interest and costs demanded and deducted by the Plaintiff are excessive, unreasonable and unconscionable.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Defendant has counterclaims against the Plaintiff and is entitled to recoupment with respect to the same.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Defendant has counterclaims against the Plaintiff and is therefore entitled to a set-off with respect to any monies found due from the Defendant to the Plaintiff.

## NINETEENTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to fully perform its obligations under the loan made to the Defendant.

## TWENTIETH AFFIRMATIVE DEFENSE

The Plaintiff has defaulted on its obligations under the loan made to the Defendant.

# COUNTERCLAIM

1. Plaintiff in Counterclaim David M. McSweeney ("McSweeney") is the Trustee of the MC Realty Trust under a Declaration of Trust dated July 6, 1999 and recorded with the Suffolk County Registry of Deeds in Book 25018, Page 271 ("the Trust").

2.   Defendant in Counterclaim Fred T. Van Dam ("Van Dam") is an individual residing at 25 Highfield Road, Roslindale, County of Suffolk, Massachusetts.

3.   McSweeney is not a beneficiary of the Trust.

4.   On June 1, 2000, the Trust executed a promissory note in the amount of $125, 000.00 in favor of Van Dam ("the Note") in connection with the Trust's purchase of the premises known as and numbered 105 Homes Avenue, Dorchester, Suffolk County, Massachusetts (the "Premises") from the 105 Holmes Avenue Realty Trust, of which Van Dam is the Trustee. A true copy of the Note is attached hereto and incorporated herein, marked Exhibit A.

5.   Interest under the Note was to be charged at 10%, and payments made under the Note were to be applied first to interest, then to principal, and were to be paid by the first of each month.

6.   Late charges under the Note were to be charged at 1% of the monthly payment of $1,652.00 and would accrue if said payment was 15 or more days past due.

7.   The Trust also executed and delivered to Van Dam a mortgage (the "Mortgage") upon the Premises in favor of Van Dam to secure the Trust's obligations under the Note. A true copy of the Mortgage is attached hereto and incorporated herein, marked Exhibit B.

8.   On April 24, 2004, Van Dam sold the Real Property via foreclosure auction for $310,000.00 to a third party.

9.   The Trust has made payments under the Note totaling at least $34,931.92.

10. On numerous occasions prior and subsequent to the April 24, 2004, foreclosure of the Mortgage, the Trust requested an accounting from Van Dam showing the application of the payments made by the Trust and the charges made to the Trust under the Note and Mortgage for interest, late fees, and costs.

11. Despite repeated demand, Van Dam neglected, failed and refused to provide the Trust with a meaningful accounting as aforesaid.

12. Despite repeated demand, Van Dam has also failed and refused to document and substantiate the amounts deducted by Mr. Van Dam from the foreclosure auction proceeds in the amount of $310,000.00.

13. Upon information and belief, Van Dam has deducted from the foreclosure sale proceeds excessive amounts for interest, attorney's fees and costs, auctioneer fees, foreclosure fees, foreclosure costs, bankruptcy fees, and interest on tax lien payoffs.

14. Mr. Van Dam has also unreasonably delayed the filing of the above-captioned Interpleader action with respect to the surplus sale proceeds and is in any event obligated to pay interest to the Trust on the surplus sales proceeds from the date that Van Dam received said funds.

## COUNT I:
## BREACH OF CONTRACT

15. The Trust hereby repeats and realleges paragraphs 1 through 14 above as if fully set forth herein.

16. Based upon his conduct as aforesaid, including but not limited to a) failing and refusing to provide the Trust with a meaningful accounting relative to the Note and Mortgage, b) deducting excessive amounts from the foreclosure sale proceeds, and c)

failing to pay interest on the actual surplus sales proceeds, Van Dam is in material breach of his contractual and statutory obligations under the Note and Mortgage.

17. Van Dam's aforesaid breach of contract was knowing and willful.

18. The Trust has suffered damages as a result of same.

## COUNT II:
## VIOLATION OF G.L. C. 244, §§20 and 36

19. The Trust hereby repeats and realleges paragraphs 1 through 18 above as if fully set forth herein

20. Based upon his conduct as aforesaid, Van Dam has violated Mass.Gen.Laws ch.. 244, §§20 and 36.

21. The aforesaid violations were intentional and willful.

22. The Trust has suffered damages as a result of same.

## COUNT III:
## USURY

23. The Trust hereby repeats and realleges paragraphs 1 through 22 above as if fully set forth herein.

24. Based upon his conduct as aforesaid, including but not limited to charging excessive interest and late fees, Van Dam has violated the provisions of G.L. c. 271, §49, by effectively charging the Trust interest in excess of 20% per annum and is therefore guilty of usury.

25. Van Dam's violation was knowing and willful.

26. The Trust has suffered damages as a result of same.

## COUNT IV:
## VIOLATION OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

27.     The Trust hereby repeats and realleges paragraphs 1 through 26 above as if fully set forth herein

28.     Based upon his conduct as aforesaid, Van Dam has violated the covenant of good faith and fair dealing implied in every contract.

29.     Van Dam's violation was knowing and willful.

30.     The Trust has suffered damages as a result of same.

## COUNT V:
## VIOLATION OF G.L. c. 93A

31.     The Trust hereby repeats and realleges paragraphs 1 through 30 above as if fully set forth herein

32.     The Trust and Van Dam are engaged in trade or commerce within the meaning of Mass.Gen.Laws ch. 93A, §11.

33.     Based upon the foregoing, Van Dam has committed one or more unfair and deceptive acts or practices in connection with the loan against the Trust.

34.     Van Dam's violations were knowing and willful.

35.     The Trust has suffered damages as a result of the same.

WHEREFORE, the Trust respectfully requests that this Court determine the actual net sales proceeds due to the Trust, Order Van Dam to pay such amout to the Trust, and award such damages to the Trust as may be proven at trial under Counts I through V

above, together with treble punitive damages where appropriate, interest, costs, and reasonable attorney's fees.

**THE PLAINTIFF-IN-COUNTERCLAIM HEREBY DEMANDS
A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**

> Respectfully submitted,
> Defendant/Plaintiff-in-Counterclaim
> DAVID M. McSWEENEY, as
> TRUSTEE of MC REALTY
> TRUST,
> By his attorneys,
>
> _____
> David J. Paliotti, Esquire
> BBO No. 547501
> GREENBAUM, NAGEL,
> FISHER & HAMELBURG
> 200 High Street, 4th Floor
> Boston, MA 02110
> (617) 423-4300

**CERTIFICATE OF SERVICE**

I, David J. Paliotti, Esquire, hereby certify that I have served a copy of the following document: Answer and Counterclaim of Defendant David M. McSweeney, as Trustee of MC Realty Trust, upon:

| | |
|---|---|
| Kevin P. Scanlon, Esquire<br>BARRON & STADFIELD<br>50 Staniford Street, Suite 200<br>Boston, MA 02114 | Randy J. Spencer, Esquire<br>BARRON & STADFIELD, PC<br>50 Staniford Street, Suite 200<br>Boston, MA 02114 |
| Barbara Healy Smith<br>United States Attorney's Office<br>John Joseph Moakley Federal Courthouse<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210 | Stephen J. Turanchik<br>U.S. Department of Justice<br>Trial Attorney, Tax Division<br>Post Office Box 55<br>Ben Franklin Station<br>Washington, DC 20044 |

Charles J. Domestico, Esquire
DOMESTICO & BARRY
The Meadows
161 Worcester Road
Framingham, MA 01701

Eric A. Howard, Esquire
DOMESTICO, LANE &
MCNAMARA, LLP
161 Worcester Road
Framingham, MA 01701

Philip S. Levoff, Esquire
1172 Beacon Street, Suite 202
Newton, MA 02461-1150

by causing a copy of the same to be mailed to them by first class mail, postage prepaid on this 24th day of February, 2005.

_____
David J. Paliotti, Esquire
BBO No. 547501
GREENBAUM, NAGEL,
FISHER & HAMELBURG
200 High Street, 4th Floor
Boston, MA  02110
(617) 423-4300

June 1, 2000                                         Boston        ,  Massachusetts
                                                     [City]                [State]
105 Homes Avenue, Dorchester, Suffolk County
Massachusetts  02010

[Property Address]

**1. BORROWER'S PROMISE TO PAY**   One Hundred and Twenty-Five Thousand and 00/100 dollars
      In return for a loan that I have received, I promise to pay U.S. $ 125,000.00   (this amount is called
"principal"), plus interest, to the order of the Lender. The Lender is   Fred T. Van Dam
      OF   25 Highfield Road , Roslindale, Massachusetts 02131
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder".

**2. INTEREST**
      Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly
rate of   10.000%
      The interest rate required by this Section 2 is the rate I will pay both before and after my default described in Section
6(B) of this note.

**3. PAYMENTS**
(A) Time and Place of Payments
      I will pay principal and interest by making payments every month.
      I will make my monthly payments on the  1st   day of each month beginning on  July 1, 2000  .
      I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
June   April 1st , 2010      ,   I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "maturity date".
      I will make my monthly payments at   25 Highfield Road, Roslindale MA   02131

                        or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
      My monthly payment will be in the amount of U.S. $  1652.00

**4. BORROWER'S RIGHT TO PREPAY**
      I have the right to make payments of principal at any time before they are due. A payment of principal only is known as
a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
      I may make a full prepayment or partial prepayment without paying any prepayment charge. The Note Holder will use
all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will
be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those
changes.

**5. LOAN CHARGES**
      If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan
charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already
collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund
by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces a principal, the
reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charges for Overdue Payments
      If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen (15) calendar
days after the date it is due, I will pay this late charge to the Note Holder. The amount of the charge will be   1.0 %
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
      If I do not pay the full amount of each monthly payment on the date is due, I will be in default.

(C) Notice of Default
      If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all
the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or
mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time which if I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that the amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  _____(Seal)
Witness To All                                                                          -Borrower

                                                                 _____(Seal)
                                                                                                        -Borrower

                                                                 _____(Seal)
                                                                                                        -Borrower

                                                                 _____(Seal)
                                                                                                        -Borrower

(Sign Original Only)

25020  314

357

Mail To:   Fred T. Van Dam
           25 Highfield Road
           Roslindale, MA 02131

SUFFOLK REGISTRY OF DEEDS
REC'D ENT'D C'FY'N ATTEST

2000 JUN -6 PM 2:52

Paul R. Tierney
REGISTER OF DEEDS

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on 105 Homes Avenue, Dorchester, MA 5/30/99
xxx......... . The mortgagor is David M. McSweeney, Sr., Trustee of Ms. Realty Trust u/d/t 6/30/99
and recorded herewith............ ("Borrower"). This Security Instrument is given to Fred T. Van Dam
..................................................................................., which is organized and existing
under the laws of .Massachusetts............................, and whose address is .25 Highfield Road,...
Roslindale, Massachusetts 02131............................................................. ("Lender").
Borrower owes Lender the principal sum of .One Hundred and Twenty-Five Thousand and 00/100...
..................................... Dollars (U.S. $ 125,000.00........). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on ......June 1, 2010............................. . This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security
of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following
described property located in .....Dorchester, Suffolk.................................. County, Massachusetts:

See Schedule "A" attached hereto

which has the address of ..105 Homes Avenue......................., Dorchester..........................,
                                    [Street]                                [City]
Massachusetts ..02010.......................... ("Property Address");
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3022  9/90  (page 1 of 6 pages)

*These forms may be purchased from HOBBS & WARREN - BOSTON, MA*

25020  315

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

*the Property and*

Form 3022  9/90  (page 2 of 6 pages)

25020  316

designating Lender as first mortgage
All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition. immediately

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's/Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property ~~as Borrower's principal residence within sixty days~~ after the execution of this Security Instrument and shall continue to occupy the Property ~~as Borrower's principal residence~~ for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. ~~If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.~~

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

Form 3022  9/90  (page 3 of 6 pages)

25020  317

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural

Form 3022  9/90  *(page 4 of 6 pages)*

25020  318

person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses

Form 3022   9/90   (page 5 of 6 pages)

25020  319

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and other persons prescribed by applicable law, in the manner prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider        ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider                  ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ V.A. Rider                     ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness(es) To All:

_____    _____ (Seal)
                                 David M. Sweeney, Trustee        -Borrower
                                 Mc Realty Trust

_____    _____ (Seal)
                                                                  -Borrower

_____    _____ (Seal)
                                                                  -Borrower

_____    _____ (Seal)
                                                                  -Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

COMMONWEALTH OF MASSACHUSETTS    Suffolk County ss:

On this 5th day of June, 2000, before me personally appeared David M. McSweeney, Ttee
David Mc Sweeney
and acknowledged the foregoing to be her/his free act and deed.

My commission expires 9/10/05

                                 _____
                                 Justice of the Peace / Notary Public - John J. Russell

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 9/90
MA6446FNM.12-01    PROFESSIONAL DOCUMENT SYSTEMS INC - (800) 437-1341    Page 6 of 6

25020  320

### Schedule A

The land in Dorchester District of Boston, Suffolk County, Massachusetts with buildings thereon, and bounded and described as follows:

| | |
|---|---|
| NORTHERLY | by Homes Avenue, fifty-nine and 34/100 (59.34) feet; |
| EASTERLY | by Lot 13 as shown on said plan, one hundred eighty-one (181) feet; |
| SOUTHERLY | by land now or formerly of Pierce, seventy-four and 34/100 (74.34) feet; |
| WESTERLY | by the remaining portion of said Lot 14, seventy-five and 51/100 (75.51) feet; |
| NORTHERLY | again on the remaining portion of Lot 14, fifteen (15) feet; |
| WESTERLY | again on the remaining portion of said Lot 14, one hundred five (105) feet; and all being the greater portion of Lot 14 on plan recorded with Suffolk Deeds at the end of Book 1463. The above described premises are conveyed subject to and with the benefit of easements of record insofar as the same are not in force and applicable. |

*For title see deed recorded as Instrument No. 110 on 6/6/200.*